Richards et ux. *v.* Warner Company et al., 'Appellants.

Argued December 9, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHÁFFER, MAXEY, DREW and LINN, JJ.

*H. Rook Goshorn,* with him *Frank R. Ambler* and *Harry S. Ambler, Jr.,* for Warner Co., appellant.

*H. A. Barton,* with him *Swartz & Campbell,* for William M. Huggins, appellant.

*W. A. Hamilton,* with him *Francis Chapman,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 23, 1933:

To arrive at a conclusion in this case with justice to all parties concerned is not free from difficulty.

The defendants, Warner Company and Huggins, appeal from a finding that they were both guilty of negligence in causing injury to Grace P. Richards. We are confronted with three questions: Was she contributorily negligent? Were both defendants at fault? If both were not, was either?

Mrs. Richards and her son were riding in a one-seated Ford roadster belonging to and driven by Huggins. He had taken the son of Mrs. Richards to a dentist for the purpose of having the son's tooth extracted. After the operation, he invited the mother to ride home with them. It was a clear bright day and the roads were dry. Their route took them north on Lincoln Drive and required them to cross Wayne Avenue, which intersects Lincoln Drive at an acute angle. Each of these highways is fifty feet wide between curbs, and because of the circular character of the street corners, the intersection is much larger than it otherwise would be. At that time there were no traffic signals of any kind at the intersection. Huggins approached Wayne Avenue driving north on the east side of Lincoln Drive. A large truck of defendant company about twenty-two feet long, driven by its employee Fleming, was traveling south on the west side

of Lincoln Drive, north of Wayne Avenue. When Fleming came to the intersection, he turned his truck left into Wayne Avenue headed east and while the truck was making the turn, having traveled circularly eastward at least thirty-five feet, the Huggins car collided with the truck and the plaintiff, Mrs. Richards, was quite badly hurt.

We will now proceed to examine with particularity the conduct of each driver to make clear, if possible, where lay the fault. First as to Fleming, the driver of the truck, because what he did gives a better insight into what happened than what Huggins did. There were four policemen standing on the southwest corner of Lincoln Drive and Wayne Avenue as Fleming approached the intersection. Two of them testified. In the main they corroborated his story as to what he did. He neared Wayne Avenue, driving on the extreme west (right) side of Lincoln Drive. (It was testified police regulations required heavy trucks so to do to enable faster moving vehicles to pass and enter Fairmount Park, which begins about six hundred feet further south on Lincoln Drive.) Intending to turn into Wayne Avenue to the left, he pulled over close to the west curb of Lincoln Drive, putting out his arm as a signal for the turn, stopped or almost stopped, and changed into second gear. He was moving at not more than seven miles an hour (there was a governor on the truck which limited its speed to fifteen miles an hour), and had proceeded only about thirty-five feet on Wayne Avenue, still in second gear, having crossed one of the two street railway tracks in that highway and almost the other, his wheels straddling the south rail, when Huggins's car ran into his truck, striking it near the center. Fleming said he observed the Huggins car as he began to turn, that it was then about three hundred feet south of him on Lincoln Drive, that he again looked at it when it was about two hundred feet from him and expected it to slow down, but the driver did not do so until within sixty or seventy feet of him when he jammed on his brakes, swerved to the

right, then to the left, and struck the truck. Fleming said he applied his own brakes so as to give the other vehicle a chance to pass in front of him and at the instant of the collision the truck was stopped or almost stopped. In his opinion, at the time the other driver applied his brakes, he was going faster than thirty miles an hour. He noticed skid marks on the road for twenty or thirty feet to the point where the car first swerved.

We now come to a review of the actions of Huggins and those in the car with him. Huggins, driving the Ford roadster, was proceeding north on Lincoln Drive. Mrs. Richards was on his right and her son was on her right on the single seat. The latter had very little apprehension of what happened because of the fact that he had not fully recovered from the effects of the gas which had been administered to him and was drowsy. He recalled that Huggins spoke about a green roadster which was trying to pass them, but on account of his drowsy condition, he did not look at it. He next heard Huggins exclaim "Oh my God," opened his eyes, saw some green letters on the side of the truck "and the next thing I knew there was an ungodly crash." He was not injured. Later in the afternoon he went to the hospital to see Huggins and when he queried him, "Bill, what about the truck? Couldn't you swerve," Huggins replied, "My God, Dick, I did not even see it."

Huggins testified that as he proceeded toward Wayne Avenue, Mrs. Richards spoke about the motorcycle policemen who were on the corner and he noticed them; and that as he got near the crossing, driving at the rate of about thirty miles an hour, he slowed down to twenty-five. He said at this speed he could have stopped his car in ten feet. He stated that he first saw the truck as it made the turn and that the driver did not make the turn from the curb (which the driver said he did and which the policemen corroborated). On cross-examination he admitted that he did not observe the truck before it started to make the turn, and that it was turning when

he first noticed it. Detailing his account of what happened, he said that as he reached the crossing he watched to see if anything was approaching from the left or right and seeing nothing, he went ahead; that there was a line of cars coming south on Lincoln Drive (Fleming said there was but one other car in addition to his truck; the policemen that there was none) ; that when he was part way across Wayne Avenue, "this truck swerved out that was in the line, and turned left in front of me, and I tried to stop; I could not swerve to the left or I would have gone in the path of the other cars, and I tried to stop and I was not able to." So far as he remembered, the truck had not fully completed the turn at the time when he struck it. He said the driver of the truck gave no signal for the turn. This statement, however, is of no consequence, as he admitted he did not see the truck until after it was embarked on the turn and the driver's extended arm would be on the side of the truck away from him.

Under his own testimony, we are of opinion that Huggins was negligent. If he had been observant, he would have been bound to see the truck and had he obeyed the law and had his car under proper control (Byrne v. Schultz, 306 Pa. 427), he could have avoided the collision. In reaching this conclusion, we are for the moment disregarding the testimony of Richards that after the accident Huggins declared to him that he did not see the truck at all before he collided with it.

Mrs. Richards testified that as they approached Wayne Avenue she saw a number of motorcycle policemen and remarked on them, that she turned her head to watch the officers and heard Huggins call her son's attention to the green roadster trying to pass them. She then heard the exclamation, "Oh my God," and a grinding of brakes and then knew nothing. She said she did not appreciate that they had come to the intersection, that she was not looking that way but across Huggins's body to her left. She

said she did not see the truck and did not notice that Huggins slowed up at all before the collision.

There was a green roadster traveling on Lincoln Drive in the same direction as and behind Huggins's car. The driver testified that he was within one hundred feet of the Huggins car when the collision took place, that he had not seen the truck before the time of the contact and that at that moment "It was just about straightened out on Wayne Avenue," very nearly parallel to the car tracks. He said his speed was about the same as Huggins's, thirty miles an hour.

Crowley, a sergeant of police, one of the officers standing on the corner, testified that he was looking north on Lincoln Drive and saw the truck coming toward him on the west side, that it pulled closer to the west curb, stopped and then started immediately and made a turn to the left on Wayne Avenue, the driver holding out his hand as a signal. The next thing he noticed was the grinding of brakes; he turned, and saw the collision, which he said took place about fifteen feet from the east curbline of Lincoln Drive. According to him the truck was then facing east on Wayne Avenue, and was nearly across the intersection when it was struck and immediately stopped. So far as he, the officer, observed, there was nothing coming in either direction at the time. He did not see the Huggins car until just as the crash came. He testified the center part of Lincoln Drive is paved and there is a gravel shoulder on either side; that the truck did not come down the center of the street, because at that time the police kept all heavy traffic over against the curb. After the collision took place, Crowley ran over to the place of the accident. He observed that Huggins's car had not reached the first rail of the eastbound (south) car track on Wayne Avenue and the truck was in between the rails of the eastbound track straddling the south rail. Another officer, Mahawinney by name, testified substantially to the same effect.

Our conclusions from this review of the testimony are:

(1) That Mrs. Richards was not guilty of contributory negligence: Cormican v. Menke, 306 Pa. 156. In that case, speaking through Mr. Justice DREW, we said (page 162) : "It is settled in this jurisdiction that the negligence of a driver is not imputed to a passenger. ...... An examination of the cases......shows the test of negligence of the passenger is his action or want of action in the face of danger which was manifest or known to him, or which it was his duty equally with the driver to observe. None of the cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle. ...... The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him. ...... The extent to which one riding as an invited guest in an automobile should anticipate an impending peril and act in relation thereto depends upon the facts of each case." Mrs. Richards was not required to keep her attention fixed on the roadway ahead of her. She could trust Huggins, the driver of the car, to exercise care in this respect.

(2) Huggins was negligent in that he either did not see the truck at all or did not take sufficient pains in his observation to see it in time to avoid it, and in not having his car under such complete control as he approached the intersecting street that he could stop it within the shortest possible distance: Byrne v. Schultz, 306 Pa. 427, 431.

(3) The truck driver was not negligent. The main foundation of the argument that he was negligent is that he *suddenly* and without warning swung the truck to the left and turned directly in front of Huggins's car. We can find no testimony in the record which warrants the

conclusion that he suddenly swung the truck to the left. All the testimony indicates just the opposite, that he slowed down before making the turn and had not gained speed before the collision. Huggins admits that he did not see him until the turn was under way. If Huggins saw the truck at all, it was but for an instant before he crashed into the side of it. Fleming had the right to make the turn and would seem to have made it in proper fashion. It was not negligence on his part to fail to anticipate negligence on the part of Huggins: Todd v. Nesta, 305 Pa. 280; Giles v. Bennett, 298 Pa. 158. It is urged upon us in this connection that he did not observe the requirements of the Motor Vehicle Code of May 1, 1929, P. L. 905, section 1011, 75 P. S., section 546, which provides that the driver of a vehicle intending to turn to the left shall approach the intersection in the lane for traffic to the right of and nearest to the center line of the highway, and, in turning shall pass to the left of the center of the intersection, keeping as close as shall be practicable to the center of the intersection, but that instead of making his turn from the center of the highway, he made it from the extreme right. Although he did not obey this requirement, liability cannot be predicated upon it, unless his violation was the proximate and efficient cause of the collision: Hayes v. Schomaker, 302 Pa. 72, 77; Gillespie v. Shafer, 69 Pa. Superior Ct. 389, 396, KEPHART, J. Obviously this provision in the statute is for the safety and convenience of those behind the vehicle making the left turn. He, however, made the turn in the way he did, not upon his own responsibility, but by order of the police authorities. Under the circumstances here he cannot be held negligent in so doing. The place from which he turned played no part in the collision. Since the truck turned from the west curb of Lincoln Drive, rather than from the center of the street, the distance it traveled in the intersection was greater, and, therefore, gave the more opportunity to Huggins to see the truck if he had been watchful. Kuneck v. Conti,

277 Pa. 455, might have some bearing on the instant case if Huggins had observed the truck before it began the turn, but he did not. Moreover, when that case was decided, as the opinion shows, a driver wishing to make a left turn was required to make it beyond the center point of the intersection of the two streets; not so under the present law. All of the other evidence in the case indicates that Huggins was mistaken in thinking there was a line of cars coming south on Lincoln Drive.

It is argued on behalf of Huggins that as to Mrs. Richards and her son he was a gratuitous bailor for their benefit and, therefore, responsible only for gross negligence. In this connection Cody v. Venzie, 263 Pa. 541, is called to our attention. Whether driving an automobile into the side of a truck in broad daylight is gross negligence may be a matter fruitful of discussion, but we need not explore the subject, as in our opinion the absence of ordinary care on Huggins' part is sufficient to fix him with liability. In the Cody Case, the want of ordinary care was held sufficient to warrant a verdict for plaintiff. In Curry v. Riggles, 302 Pa. 156, where the plaintiff was a gratuitous passenger, we held the defendant was required to exercise ordinary care.

The judgment against the Warner Company is reversed and judgment is here entered in its favor. The judgment against Huggins is affirmed.