SMITH v
CUSHMAN MOTOR DELIVERY CO

Ohio Appeals, 1st Dist, Hamilton Co

No 5071. Decided Sept 21, 1936

Cohen, Mack & Hurtig, Cincinnati, for appellee.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

This case comes into this court on appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County in favor of the plaintiff. The action is one for wrongfully causing death. The jury found a general verdict in favor of the plaintiff, the court overruled the defendant's motion for a new trial and rendered judgment on the general verdict.

The parties went to trial upon a second amended petition and the answer thereto. From this second amended petition and the evidence it appears that the death resulted from injuries received in a collision between two automobile trucks on a public highway in the State of Indiana. The decedent was employed by one William Bernick, and was on the seat of a truck owned and operated by him, engaged in transporting freight for Le Crone Motor Transport, Inc., with which he had some arrangement to carry its freight between Columbus, Ohio, and Chicago, Illinois. They were proceeding from Chicago in a southerly direction about five miles north of Morocco, Indiana, when the truck came in collision with a truck which the plaintiff alleged was under the control and management of the defendant through its agent Fitzgerald. This latter truck was either parked on the west side of the highway or was moving slowly in a southerly direction, as was the truck upon which the decedent was riding. The right side of the truck in which the decedent was riding struck the left rear corner of the truck operated by Fitzgerald.

The negligence alleged in the second amended petition was that: "At the time herein complained of the defendant had parked a truck facing south on the right side of Route 41 so that a portion of said truck extended onto the improved portion of said highway and that it permitted the same to be so parked without maintaining any warning lights or signal lights to notify the said William Bernick or Floyd E. Fields that the truck was so parked, and that by reason thereof the truck in which the said Floyd E. Fields was a passenger collided with the left rear of said truck so parked by defendant and sideswiping the same, the collision of said trucks causing an explosion of two tanks of gasoline on the right side of the truck in which Fields was a passenger."

Several sections of the Motor Vehicle Law of Indiana were pleaded, the only provision of which that it seems necessary to mention being the one that requires that the operator of a commercial motor vehicle upon the public highway when he stops at night to cause to be displayed in a prominent position above the surface of the highway at a distance of approximately three hundred feet from such vehicle in the direction from whence it was coming and also in the direction in which it was proceeding a brilliant-burning danger or caution signal.

The evidence was conflicting as to whether the Fitzgerald truck was stationary or moving at the exact time of the collision. It was admitted that it had been parked for a very short time just before the collision, but the defendant's witnesses testified that it had just started to move and had not gotten completely on the concrete of the road at the time of the collision. It was also admitted that no flares or signal lights had been placed on the road as required by the statute.

The evidence was conflicting as to whether there was any rear light on the Fitzgerald truck.

After stating the allegations of the second amended petition and the answer thereto substantially in the language of the pleadings, the court stated the issues submitted to the jury as follows:

"1. Whether the truck with which the truck in which Fields was riding collided, was being operated and controlled by the agent and servant of the defendant, The Cushman Motor Delivery Company, or was the same being operated and controlled by an independent contractor.

"2. If you find from the evidence that the truck with which the truck in which Fields was riding collided, was being operated and controlled by the servants and agents of The Cushman Motor Delivery Company, was the defendant The Cushman Motor Delivery Company, by its servants and agents, negligent as alleged in the petition, and if so, was such negligence the sole and proximate cause of the death of plaintiff's decedent.

"3. Was the driver of the truck in which plaintiff's decedent was riding, guilty of negligence which was the sole cause of the death of plaintiff's decedent.

"4. Was the plaintiff's decedent guilty of negligence which caused or contributed to cause his injury and death.

"5. In the event that you find in favor of the plaintiff, and only in that event,

what is the amount of damages, if any, sustained by the next of kin of plaintiff's decedent as a direct and proximate result of the negligence of the defendant."

The usual forms of general verdicts were furnished to the jury and on the request of the defendant the court submitted certain special interrogatories to be answered in the event a general verdict was returned. These special interrogatories were:

"1. Did Floyd E. Fields use his faculty of sight to discover objects which might be in the path of Bernick's truck?

"If you render a general verdict I instruct you specially to find on particular questions of fact, to-wit:—

"Do you find that Fitzgerald's truck was moving at the time of the accident? And next:—

"Do you find that Fitzgerald's truck was so close to the time of being about to move at the time of the accident, that it was necessary for all of its occupants to be on it? And next:—

"Do you find that Fitzgerald was negligent in failing to have flares and signals on the highway?"

The jury returned a general verdict for the plaintiff and returned the interrogatories unanswered. The court sent the jury back to its room with the general verdict forms and the interrogatories to complete its task. Later the jury returned the same general verdict with the interrogatories still unanswered accompanied, however, with a written statement signed by ten jurors that:

"We, the jury, fail to agree to the answers to the questions in the interrogatories. We find that the evidence and testimony as given in favor of the plaintiff."

Thereupon, the jury was discharged without any objection or exception by either party.

The first question presented is whether the judgment based on the general verdict can be sustained in view of the disposition of the interrogatories.

It is uncontroverted that if interrogatories are presented which a party had a right to have submitted, the answers to which might have been in- █ consistent with the general verdict, the court must submit them to the jury for answer in the event a general verdict is returned. **39 Ohio Jur., 1150.**

The plaintiff contends that these interrogatories were not such as should have been submitted and that, therefore, the failure of the jury to agree upon answers thereto has no effect upon the general verdict, and also that the answers were waived by allowing the jury to be discharged without objection based on the failure to answer them.

Now were these interrogatories such that the defendant had a right to have them submitted to the jury to be answered in the event a general verdict was returned? And might the answers have been irreconcilable with a general verdict for the plaintiff?

It seems to the court that these questions can be answered only by a consideration of the scope of the issue submitted to the jury for decision. It is claimed by the defendant that the only claim of negligence made in the second amended petition was that the defendant failed to set out flares or signal lights on the highway as provided by statute and that no claim was made that the defendant failed to have a light on the rear of the truck itself. The plaintiff contends to the contrary. While the allegations are not as clear as they might be, we are of the opinion that they are sufficiently broad to in- █ clude the failure to have lights on the truck itself, as well as upon the highway away from the truck, as provided by the statute. If the defendant had desired more definite information as to the extent of the charge of negligence, it should have sought it in the appropriate way at the appropriate time. It comes too late after verdict rendered.

We find that there was substantial evidence that there was no rear light on the truck and that this issue was submitted to the jury.

In **39 Ohio Jur., 1173,** et seq. it is said:

"It is reasonably clear that the mere failure of the jury to agree on answers to special interrogatories, or their inability to answer such questions is not necessarily inconsistent with, or destructive of, a general verdict. This is particularly true if an answer would not control or test the general verdict."

Now in view of the issue should these interrogatories have been submitted and would conceivable responsive answers have been inconsistent with the general verdict?

A reading of the first three interrogatories is sufficient to disclose that they relate exclusively to the issue of the violation of

the statute requiring signal lights or flares to be placed upon the highway at certain distances from a parked auto truck, and that they in no way relate to the issue of the failure to have a light on the rear of the truck. No matter how they might be answered they could not be inconsistent with a verdict based on negligence in failing to have a rear light. As no interrogatory was submitted relating to that phase of the charge of negligence, the answers to these interrogatories could ▇▇▇▇▇▇ ▇ not have controlled the general verdict, and, therefore, the failure to answer them could not be prejudicial to the defendant.

The interrogatories submitted here are entirely different from those in **Davison v Flowers, 123 Oh St, 89.** In that case, as in this, more than one specific act of negligence was charged, but in that case the answers to the interrogatories would have disclosed upon what act of negligence the verdict for the plaintiff was based. The interrogatories here would have served no such purpose. They expressly limited the inquiry to one of two possible bases of recovery, and, therefore, had they been answered, it could not have been said that the answers were inconsistent with the verdit.

This leaves for consideration whether the fourth interrogatory—the one relating to contributory negligence—was one that should have been submitted to the jury and which it should have answered as a condition to the returning of a general verdict. The jury reported that it could not agree on the answer to this as well as the other interrogatories.

While the law required the plaintiff to equalize or neutralize any inference of contributory negligence that might arise from the evidence introduced by him, still the burden of proving negligence ▇▇▇▇▇▇ ▇ proximately contributing to the accident, upon the whole evidence, rested upon the defendant. Assuming for the moment that there was some evidence of contributory negligence, we would be forced to hold it was so slight that it could not be said as a matter of law to overcome the presumption of due care on the part of Fields.

The failure of the jury to agree was equivalent to a finding that the defendant had failed to sustain the burden of proof resting upon it in that respect. **Noseda v Delmul, 123 Oh St, 647;** Railroad Company v·Swartz, 58 Kan. 235; **39 Ohio Jur., p. 1175.**

We hold, however, that there was no evidence of contributory negligence. Fields was an employee of Bernick. ▇▇▇▇▇▇ ▇ There was no evidence that Bernick was an incompetent driver; or, if so, that Fields knew it. Now is there any evidence that Fields had any knowledge of the danger at any time before the collision. Under such circumstances, Bernick's negligence, if any, cannot be imputed to Fields, (29 **Ohio Jur.,** §120, at page 594) nor can Fields be charged with personal negligence in leaving the exclusive control of the truck to Bernick. He was performing the duty of his employment by giving no attention to the operation of the truck while it was being operated by Bernick, so that he could properly operate it when his turn came. Under such circumstances, his duty to warn or intervene while Bernick was driving ▇▇▇▇▇▇ ▇ ing did not arise until he became aware that there was some reason that he should. While he was not strictly a passenger, the same principle applied to him as to a guest. In Richards v Werner Co., 311 Pa. 50, 166 Atl., 496, 87 A.L.R. 1159, the court says at pags 163, et seq:

"'An examination of the cases * * * shows the test of negligence of the passenger is his action or want of action in the face of danger which was manifest or known to him, or which it was his duty equally with the driver, to observe. None of the cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle. * * * The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him.' * * * The extent to which one riding as an invited guest in an automobile should anticipate an impending peril and act in relation thereto depends upon the facts of each case. 'Mrs. Richards was not required to keep her attention fixed on the roadway ahead of her. She could trust Huggins, the driver of the car, to exercise care in this respect'."

In the two cases (Travelers Ins. Co. v Staten Island Rapid Transit Co., 234 N. Y. S. 293, and Lagoy v Director General, 231

N. Y. 191) by helpers to recover for injuries or death it clearly appeared that they were aware of the impending danger in ample time to require that they do something to avoid injury. The facts are entirely dissimilar to the facts in the case under review.

This conclusion also disposes of the defendant's claim that the special charges, given at the request of the plaintiff, ignored the defense of contributory negligence. It also disposes of the contention that the court erred in refusing to give a special charge on the subject, requested by defendant. As there was no evidence of contributory negligence, the issue should not have been submitted to the jury, and the verdict submitted to the jury was properly made to depend solely on the issue of defendant's negligence.

Furthermore, it seems to us that the defendant waived any more specific answer to these interrogatories by allowing the jury to be discharged without objection. 39 Ohio Jur., p. 1175.

We conclude, for these reasons, that the general verdict is not invalidated by the failure of the jury to agree upon specific answers to the interrogatories.

As we regard the issue of the absence of a rear light embraced within the language of the second amended petition, tion, the action of the court in allowing an amendment specifically alleging such absence, was not prejudicial.

Next, it is urged that the verdict is manifestly against the weight of the evidence. Indeed it is claimed that the record shows that the sole proximate cause of this collision was the negligence of those in charge of the truck upon which the decedent was riding.

If the defendant's truck was either standing or moving on the public highway without a rear light, the question of whether such conduct was negligence was an issue of fact to be determined by the jury. If it was parked on the highway under such circumstances as to make applicable the statute requiring flares or signal lights, then negligence was proven 'as a matter of law. There could be therefore no question of the existence of defendant's negligence after the jury had found a general verdict for the plaintiff unless there was no substantial evidence to support one of these theories. In our view there is substantial evidence. Two juries have so decided in this case alone, and we do not think we would be justified in disturbing the verdict on that ground.

But it is said that this negligence could not have been a part of the proximate cause of the collision—that the sole proximate cause was the negligence of the operator of the Bernick truck in proceeding in violation of the "assured clear distance" statute—and that it has been so decided in two recent decisions of this court (Comer v Werner, No. 4919 and Mossman v Cincinnati, No. 5041), and by the case of Pennsylvania Ry. Co. v Huss, 96 Ind. App. 11, 180 NE 919, decided by the Appellate Court of Indiana, a copy of the opinion in which was introduced in evidence as proof of the law of Indiana on this subject.

We think it clear from the language of the opinions in Pennsylvania Ry. Co. v Huss and Mossman v Cincinnati that what the court held was that the evidence showed no negligence on the part of the defendant, and for that reason the negligence of the driver of the colliding automobile was the sole proximate cause of the accident. We cannot say in this case as was said in those cases that the defendant was not negligent.

In Comer v Werner the circumstances showed an attempt by an automobile driver to pass a hay-wagon ascending a hill when another automobile appeared over the crest thereby creating an emergency which caused the automobile driver to collide with the side of the hay-wagon. In the view of the court the verdict was manifestly against the weight of the evidence as to the absence of a tail light on the wagon being a proximate cause of the collision. The case is entirely dissimilar in its facts.

Refusal of the court to give two special charges on the subject of damages is assigned as error. Both of these charges were predicated on the proposition that if there was no evidence that decedent supported his family, only nominal damages were recoverable. In an action to recover for wrongfully causing death the entire pecuniary loss is recoverable. There are other elements of pecuniary loss than support and therefore the charges were properly refused.

Next, it is urged that the court erred in admitting evidence of statements made by the witness Harwood to those in charge of defendant's truck. The record does not show that this question was properly re-

served. If error was committed, no objection or exception was made to the statement that was introduced.

As to the testimony of Hines to questions by Bernick to defendant's employee as to why they were "parked like that" and his answer that they were "only parked for a minute," it is our view that as it was uncontroverted that the defendant's truck had been parked and the only controversy was whether it had just started to move when the collision occurred this testimony could not have affected the jury in determining the issue of whether the defendant's truck was moving or stationary at the instant of collision.

We have re-examined the evidence relating to the agency of Fitzgerald and are of the opinion that the issue was one for the jury and that the court would not be justified in disturbing its finding.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.