**BUSH, Admr., etc., Plaintiff-Appellant, v. HARVEY TRANSFER COMPANY, et, Defendants-Appellees.**

Ohio Appeals, First District, Butler County.

No. 898.   Decided July 2, 1945.

C. W. Elliott, Middletown, J. T. Riley, for plaintiff-appellant.

August A. Rendigs, Cincinnati, Elmer E. Strasser, Cincinnati, and Williams, Fitton & Pierce, Hamilton, for Harvey Transfer Co.

Baden & Fiehrer, Hamilton, for Holmes to Homes Transportation Co.

## OPINION

By HILDEBRANT, P. J.

Plaintiff's decedent riding as a guest in an automobile driven by one Crigler was killed when said automobile crashed into the rear of the Harvey Transfer truck, driven by one Hopper, which had come to an emergency stop on the highway, due to a blown fuse extinguishing all its lights, while being driven at night in a southerly direction on Route 4, between Middletown and Hamilton in Butler County, Ohio. The Holmes truck driven by one Dennis in a northerly direction was stopped off the main traveled portion of the highway on the gravel entrance to a driveway approximately 200 feet north of the disabled truck, while its driver investigated the necessity for aid. The headlights of the Holmes truck were undimmed, but remained on bright, shining in a northerly direction.

The Holmes driver, observing the lights of the approaching Crigler automobile some 1000 to 1500 feet away, stood about 3 feet east of the center line of the highway and attempted to flag the Crigler car by waiving a hand flashlight. As the Crigler car passed him, he yelled "Look out for that truck." The only response of the driver of the Crigler car, to the warning thus given was to steer his automobile somewhat to the right and it continued on at the same rate of speed until it crashed into the rear of the disabled truck, the center of its bumper striking the right rear wheel of the Harvey truck.

The principal claims of error are as to the giving of defendants' special charges numbered 4, 3, 1, 6, and 7, and injecting the question of contributory negligence into the case by a charge of the court thereon.

Special charge No. 4 was as follows:

"I charge you that where one without fault of his own is placed in a situation of sudden emergency he is not to be held to the exercise of the same care and circumspection that is required of one who is acting under normal conditions where no emergency is present. The test to be applied is, whether or not the person in such a situation of sudden emergency did or attempted to do what a reasonably prudent person would have done under the same or similar circumstances.

"If, therefore, you find from the evidence in this case that

the driver of the Harvey Transfer Company truck, Hobart Hopper, without fault of his own, was placed in a situation of sudden emergency and that while in such a situation he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances, then he was not negligent."

Sec. 6307-100 GC, has set forth what shall be done in such an emergency and there is no room for application of the otherwise correct charge under the common law. Sec. 6307-100 GC, provides:

"(a) Whenever any motor truck, trackless trolley, bus, commercial tractor, trailer, semi-trailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles and trackless trolley, the operator of such vehicle or trackless trolley shall display the following warning devices upon the highway during the time the vehicle or trackless trolley is so disabled on the highway except as provided in subsection (b):

1. A lighted fusee shall be immediately placed on the roadway at the traffic side of such vehicle or trackless trolley unless red electric lanterns are displayed.

2. Within the burning period of the fusee and as promptly as possible three lighted flares (pot torches) or three red electric lanterns shall be placed on the roadway as follows:

One at a distance of forty paces or approximately one hundred feet in advance of the vehicle, one at a distance of forty paces or approximately one hundred feet to the rear of the vehicle or trackless trolley except as hereinafter provided, each in the center of the lane of traffic occupied by the disabled vehicle or trackless trolley, and one at the traffic side of the vehicle or trackless trolley.

\* \* \* \* \*"

It was, therefore, prejudicial error for the court below to give defendants' special Charge No. 4.

As to the issue of contributory negligence, the obligation of a guest is generally set forth in Smith v Cushman, 54 Oh Ap 99, at page 107, quoting from Richards v Warner Co., 311 Pa., 50, (166 A., 496, 87 A. L. R., 1159), as follows:

" 'An examination of the cases \* \* \* shows the test of negligence of the passenger is his action or want of action in the face of danger which was manifest or known to him, or

which it was his duty equally with the driver to observe. None of these cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle. * * * The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him. * * * The extent to which one riding as an invited guest in an automobile should anticipate an impending peril and act in relation thereto depends upon the facts of each case.' Mrs. Richards was not required to keep her attention fixed on the roadway ahead of her. She could trust Higgins, the driver of the car, to exercise care in this respect."

The evidence here shows plaintiff's decedent and Crigler left their wives at a picture show and started out for an evening alone, visiting various places where intoxicating liquors were sold over a period of two or more hours but admitting to only two glasses of beer each. Approximately as late as 9:30, P. M., or later, they started to drive in a southerly direction on the Middletown-Hamilton Road, with no particular destination in mind. Crigler testified he was driving about 30 miles per hour, when the lights of a truck blinded him and very shortly thereafter the collision occurred. He testified that decedent was awake and upright in the seat beside him and they were talking and that, although looking ahead at the time, decedent said nothing about the blinding lights nor the waiving flashlight nor the warning call to "Look out for that truck," nor took any action of any kind to direct the attention of Crigler thereto.

The Highway Patrolman testified that several hours after the collision, Crigler's breath was heavy with the odor of beer. Thus, there was some evidence of drinking of intoxicating beverages by Crigler and decedent was in position to have known the extent thereof. While this Court would be very reluctant to extend to the guest a duty of discovering dangers, yet it appears from the record that decedent was faced with the blinding lights, if they were blinding, at the same time as the driver and was faced with the warning flashlight and spoken warning, and the disabled truck and the open roadway to the left of it which became discernible in the light of the Crigler car were as apparent to him as to Crigler.

On approaching the scene of this accident, the ordinarily prudent man, riding as a guest in the front seat beside the driver in the night time, would perforce become aware of the lights described by the driver as blinding, and would perforce become aware that such lights were stationary. He would also become aware of the waving flashlight and attach his own significance thereto. Would the circumstances above set forth, when coupled together, cause the ordinarily prudent man to become alert and when the driver failed to slacken his speed cast a duty on the guest, out of consideration for his own safety, to call the attention of the driver to what his own sense of sight had communicated to him? While the time was short after the warning call, yet still was it too short for the guest to speak and was it too short to observe in the lights of the car the hazard and the open way to the left thereof, so as to utter some word of warning for his own safety? The Court believes the above would not be an unreasonable analysis of the situation and, therefore, presents a question of fact for the jury, rendering the charge on contributory negligence proper.

Since no interrogatory was submitted to test the general verdict, the two issue rule must apply, and it is unnecessary to elaborate on the other claimed errors except to say that the Court finds no error in the record, prejudicial to appellant other than that indicated above.

The judgment is affirmed.

MATTHEWS, J., concurs in separate memorandum.
ROSS, J., dissents in separate memorandum.

MATTHEWS, J., (concurring).
Undoubtedly, violation of §6307-100 GC, by the operator of the truck would be negligence as a matter of law, and his negligence would be imputed to his employer.

If we assume a violation of the statute there is no occasion to consider what a reasonably prudent person would do in an emergency. But on the evidence, we are not justified in making such an assumption.

The absence of fusee or flares would not per se constitute a violation of the statute. It was the failure of the operator to place them in the required position that constituted the offense against the State and the private wrong against any one directly injured thereby. Now the legislature must have intended that the operator should have an opportunity to comply with the statute before imposing upon him criminal and civil liability.

The evidence in this case raised the issue of whether the operator had time and opportunity to take the statutory precaution after the lights on his truck went out and before this collision. If he had not had time and opportunity, there was no violation of the statute and no negligence attributable to him, because of the absence of fusee or flares.

It seems to me that Special Charge No. 4 can be justified in this case on this theory, even though the same charge would be erroneous in another case, where the operator admittedly had had plenty of time to comply with the statute.

Furthemore, observance of positive rules of law is within the concept of the standard of conduct of a reasonably prudent person. They are not conflicting thoughts. And the court charged correctly on the effect of the violation of §6307-100 GC, in its general charge.

At any rate, I am not convinced that the giving of Special Charge No. 4 was so prejudicial as to require a reversal of this judgment.

I also agree with Judge Hildebrant that the issue of contributory negligence was properly submitted to the jury, and that the two issue rule requires an affirmance of the judgment.

ROSS, J., (dissenting).

I dissent from the opinion and judgment of my associates, for the reason that the verdict in this case constitutes one of the most glaring miscarriages of justice to be found in the books. That verdict was not only clearly against the manifest weight of the evidence, but, if predicated upon contributory negligence of the decedent guest passenger, as it undoubtedly was, as will later herein appear, was wholly unsupported by any evidence.

Even if the scintilla rule were still in existence in Ohio, the evidence would fail to justify the submission of the issue of contributory negligence to the jury. These statements are made only after a careful examination of the record and are irresistible conclusions demanded by the facts presented.

Kenneth Crigler, a young man 23 years of age, married some two years, steadily employed, on May 19, 1943, at about 8:15, P. M., in company with his wife, who was then pregnant, drove to the home of the decedennt Hobart Bush. Mr. and Mrs. Crigler and Mr. and Mrs. Bush then drove to a moving picture theatre in the City of Middletown, where all of these parties resided. Crigler did the driving. The ladies went into the theatre, and Crigler and Bush drove to a place known as

the Smile Restaurant, where they had two glasses of 3.2 beer. Crigler and Bush had become acquainted some time before, both being employed at the same plant. They had driven together in Crigler's automobile a number of times previously, Crigler driving. Bush had brought Crigler to his home a number of times for meals. There is nothing in the record to disclose that Bush did not have perfect confidence in the ability of Crigler to operate his automobile. Crigler had been driving automobiles eight years.

After staying at the Smile restaurant, talking for about an hour, Crigler and Bush drove to a place known as the Airport Inn, where they neither ate nor drank anything. They played a pinball machine for some time and then left at about 9:45 P. M., driving toward LaSourdesville, proceeding southwardly on Route 4, Crigler still driving.

As the Crigler car passed over the brow of a hill, the bright lights of a truck, apparently approaching from the south, were observed by Crigler, who states he was blinded by their glare and that he applied the brakes of the car, swerving toward the right of the road, where it crashed into a truck of the Harvey Transfer Co., parked on the highway with no lights. Bush was killed. Crigler is the only witness of what occurred in his automobile. He states that Bush was sitting at his side, and that he did nothing and said nothing just before the crash. An officer who appeared shortly after the collision stated he detected the odor of beer on Crigler's breath.

The Harvey truck and trailer at about 9:30, P. M., was being driven by Hobart Hopper (who died in March, 1944, his deposition having been taken in July, 1943) southwardly on Route 4 and was stopped by Hopper at the place of collision, because all of the lights on the truck were suddenly extinguished because a fuse had burned out. Hopper stopped the truck on the paved portion of the highway, being afraid to move over to the wide berm, because of the darkness. He stated he "got a fusee and stuck it on the back of the trailer." While getting out his "torches" the collision occurred. In this connection it is apparent that Hopper wholly failed to carry out the specific requirements of §6307-100 GC, which requires that when such mobile equipment is stopped—
"1. A lighted fusee shall be immediately placed on the **roadway** at the traffic side of such vehicle" etc. (Emphasized added.)
"2. Within the burning period of the fusee and as promptly as possible, three lighted flares (pot torches) or three electric lanterns shall be placed on the roadway" etc. Hopper did none of these things, and it is clearly apparent that his

failure to do so constituted negligence per se and was a definite contributing cause to the death of Bush.

Now as to the testimony of Russell Dennis, the driver of the Holmes Transportation Co. truck, which was proceeding northwardly on Route 4.

He states that he observed the Harvey truck parked on the highway—that as he passed it, he called out, asking the driver "What is your trouble?" and he said his lights went out. Dennis saw no fusee burning anywhere on the Harvey truck, as he approached it, while passing it, or at any other time. No reflectors were visible on the Harvey truck. He drove the Holmes truck some 200 feet north of the Harvey truck, parked his truck on the side of the road, left his lights burning, and seeing a car approaching from the north took a flash light from his cab, stepped out in the road 8 feet, placing himself about 3 feet from the center line of the highway, and waived the flash light at the approaching car, which was that driven by Crigler. As the car passed Dennis, he shouted "Watch out for that truck." The Crigler car swerved to the right and crashed into the Harvey truck. In this connection, it may be here stated that it would be perfectly logical for the driver of a car to veer away from one waving a flash light and to presume that the "truck" which he was to "watch out" for was on the side of the road, from which the flash light was waving.

There can be no question that the intentions of Dennis were of the best, but it is also apparent that his action coupled with the glare of the headlights he left burning were a contributing factor in causing the death of Bush.

These facts furnish evidence requiring a verdict against both defendants. A contrary verdict would be against the manifest weight of such evidence. Why then was the verdict in favor of both defendants? It is true no interrogatory was presented and the unfortunate effect of the two issue rule is here presented. However, it must be apparent, giving the jury credit for ordinary intelligence that they found some justification for a conclusion of contributory negligence on the part of Bush the decedent. An examination of the charges presented suggest the answer to the question.

In the general charge the court said:

"Now, Ladies and Gentlemen, it is the duty of the Court to call your attention to this further provision of the law which while it does not appear in the pleadings, nevertheless the state of the record requires the Court to charge you upon this particular point of law. And that is. that even though

the defendants or either of them may have been guilty of some act or acts of negligence as charged by plaintiff, the plaintiff in this case can not recover if his decedent, Hobart Bush, Jr. was guilty of negligence proximately causing his death or in other words, if Hobart Bush, Jr. was guilty of what is called contributory negligence; that is, if by his failure to exercise ordinary care and caution under the circumstances if you should so find, he directly contributed to produce the injuries which caused his death.

"It was the duty of Hobart Bush, Jr. as he was riding along this highway to exercise ordinary care for his own safety, that is that degree of care which ordinarily careful and prudent persons are accustomed to use under the same or similar circumstances. And it is for you to determine from all the evidence whether Hobart Bush, Jr. was at said time and place in the exercise of ordinary care as the circumstances required. If you find that Hobart Bush, Jr. and the defendants or either of them were negligent and that the negligence of Hobart Bush, Jr. and the defendants or either of them was a proximate cause of the collision, then Hobart Bush, Jr. and either one or both of the defendants were negligent and the plaintiff can not recover.

"The burden of proving contributory negligence rests upon the defendants which they must prove by a preponderance of the evidence. This is true unless the evidence offered on behalf of the plaintiff raises a presumption of contributory negligence, in which case it is the duty of plaintiff to counter-balance that presumption."

In addition to this, the Court gave the following special charge:

"I charge you that even if you should find from the evidence in this case that the driver of the Harvey truck was negligent at the time and place of the collision herein sued upon, still if you further find that the plaintiff's decedent, Hobart Bush, Jr., failed to exercise ordinary care and prudence for his own safety at the time of or immediately prior to the collision in question, and that such failure on his part directly contributed in the slightest degree to the proximate cause of his resulting injury and death, then the plaintiff in this case cannot recover against the defendant Harvey Transfer Company and your verdict must be for said defendant.

"Ordinary care and prudence as used in this charge means that degree of care and prudence which is usually

exercised by ordinarily careful and prudent persons under the same or similar circumstances. And the Court tells you that is the law."

In the giving of these charges upon contributory negligence the Court committed error, prejudicial to the plaintiff, for the reason that there was no substantial evidence either in the evidence of the plaintiff or the defendants remotely suggesting negligence on the part of the decedent Bush.

In the absence of inference from the plaintiff's evidence, the duty is on the defendants to prove two things. First, that the plaintiff was negligent; second, that such negligence was a contributing cause to his death. The inference referred to is also double barreled. There must not only arise an inference of negligence, but an inference that such negligence, if it existed, was a.contributing cause of plaintiff's death.

In other words, contributory negligence is never presumed. 29 O Jur 627.

The third paragraph of the syllabus in the case of Stevens v. Industrial Commission, 145 Oh St 198, is:

"It is the duty of a party upon whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden."

In Martin v Heintz, 126 Oh St 227, it is stated at page 230 of the opinion:

"It is elementary that negligence is never presumed; it must be proven. There is no presumption of negligence as against either party to an accident, except such as arises from the facts proven. The presumption of law is that neither party was guilty of negligence, and this presumption stands until rebutted by evidence to the contrary."

What is the evidence relied upon to suggest negligence on the part of Bush? That after having two bottles or glasses of 3.2 beer, he permitted Crigler to operate the automobile in which he rode? It is stated that Crigler's breath carried the odor of beer. How much beer is required to create an odor? How much 3.2 beer must Crigler drink in order to present a condition requiring Bush to refuse to ride with him? Where is there a suggestion in the evidence that Crigler, with whom

Bush had many times ridden before, was not fully capable of exercising the required care and judgment necessary to properly drive the automobile? Bush should have seen the parked truck it is claimed. Why? Was it visible in time to warn Crigler? Bush should have seen the flash light and heard the warning cry of Dennis. Should he? Dennis was on the side of the car away from Bush. Crigler says he neither saw the flash light nor heard the cry. Is Bush guilty of negligence because he did not indicate to Crigler what he may or may not have seen or heard. Crigler says his eyes were blinded by the lights from the Holmes truck. May not Bush too have been blinded? But it is evident all of this is simply groping in the field of pure speculation. All the evidence shows is that Bush did nothing but remained quiet until he was killed. Before discussing what he may have been required to do, let us remember again that whatever it was, the failure to do it must have been a contributing cause of his death. Again, only by entering the vast field of speculation can the failure to perform any vague duty resting upon Bush be said to be a contributing cause of his death. The guest passenger has **no** control over the operation of the car. Only by advice or warning can he in any way hope to control its course. What the effect of such advice or warning will be must again be found in the realm of speculation. Will the driver heed it or resent the action of his guest as a criticism of his operation of the car? How often must the guest so jeopardize his position? Is the jury to be free to speculate upon the proper exercise of such action? What would occur when many guests suggest opposite courses?

From a practical viewpoint if a duty to warn rests upon the guests, what an intolerable situation would exist if it was fully performed. Railroad crossings, street intersections, lights, parked and moving vehicles, road depressions, all would furnish constant material for warnings, caution and advice. Must the guest be constantly on the alert, or with confidence in his driver, may he not trust in serene repose that the vehicle will be properly operated. The instant case develops a situation for speculation favorable to the decedent. Suppose Bush had seen the Holmes truck lights and the warning flash light and heard the warning cry. Crigler was slowing down and swerving away from what was the apparent area of danger. What should Bush have added to such action on the part of Crigler. But it is stated Bush must have seen the parked, dark Harvey truck. Can it be seriously **imagined** that if he had observed the Harvey truck and that Crigler's car was hurtling toward it he would have sat quietly awaiting the crash? Does not reason tell us he would

have in some way sought safety? It is manifest that he did not see it and could not because it was in total darkness.

Another factor contributed with those mentioned to insure the death of Bush and that was the negligence of Crigler. He stated he preferred usually to drive with his "dim" lights because he could better see the edge of the road and he was so driving at the time of the collision. It is evident that such lights as he had were insufficient to illuminate the dark Harvey truck at a distance permitting him to stop his automobile. In other words, he was not driving at a speed permitting him to stop within the assured clear distance ahead. That distance being the radius of the light from the lamps upon his car. This factor was all that was necessary to complete the combination of circumstances from which only one result could ensue—the death or injury of the guest passenger in the Crigler car.

Against this conclusive development of fact is proferred—conjecture and speculation as to what Bush could or might have done to avert this collision. Again, speculation and conjecture are not legitimate inferences, and certainly not proof, that proof demanded of the defendants to establish those two necessary elements of their defense—a defense not even alleged, failure to exercise care and the causal connection between such failure and the death of the decedent.

Charges upon this issue have been considered by the Supreme Court in a number of cases: Toledo Railways & Light Co. v Mayers, 93 Oh St 304; The Board of Commissioners of Logan County v Bicher, Admx., 98 Oh St 432; Hocking Valley Ry. Co. v Wykle, Jr., 122 Oh St 391; Tidd v New York Central Rd. Co., 132 Oh St 531; Baltimore & Ohio R. Co. v. Joseph, 112 Fed. (2d.) 518.

Essentially, the rule is that the guest occupant of a private car is required to use the care for his own safety which reasonably prudent persons are accustomed to use in the same or similar circumstances. A rule which applies to every human being in every conceivable contingency.

What the trial court had to determine and what this Court has to determine, in order to say that there was no substantial evidence of contributory negligence on the part of decedent, is specifically what the decedent was required to do under the circumstances here presented. It is not a question of leaving the problem to that all-wise organ of judicial administration, the jury, the court is required to determine what duty rested on the decedent and whether there is any substantial evidence that he failed to perform that duty. This problem is presented to every trial court when the question of contributory negligence is presented.

The decedent was required to use ordinary care for his own safety, not the safety of the driver or of the vehicle, but his own safety. Certainly, that duty cannot be called into action unless there is reasonable cause to believe that his own safety may be menaced.

We are approaching the border line of joint enterprise, if the passenger in looking out for his own safety must exercise the same degree of care that is required of the driver on whom he has a perfect right to rely. It has been held in the authorities cited that he is not required to exercise the same degree of care as the driver and that the driver's negligence may not be imputed to the passenger, and that they are not engaged in a joint enterprise, merely because of the relationship of driver and passenger.

In **Myers, Admr. v Norfolk & Western Ry. Co., et al., 122 Oh St 557**, a petition was under attack because it was claimed that the plaintiff had in his allegations raised a presumption of negligence, which he had not rebutted by other allegations showing the exercise of proper care. In that case, (a railroad crossing case) the demurrer to the petition was sustained by the trial court and the plaintiff, not desiring to plead further, judgment was entered for defendant, which judgment was affirmed by the Court of Appeals, and reversed by the Supreme Court. At page 558 of the opinion, it is stated:

"Briefly stated, the third amended petition recites that about 7 A. M. on the 4th day of April, 1926, the defendant, who was a passenger invitee riding upon Gugle's truck, sustained injuries caused by the negligence of Gugle and the railway company; that he was accustomed to ride home from his work on said truck; and that, for a long period of time before the accident, and upon the invitation and with the knowledge of the defendant Gugle, the decedent 'had customarily and constantly ridden out on said truck;' that upon this occasion the truck was driven by the defendant's employee Stiles, upon the business of the defendant; and that such employee negligently drove the truck over said crossing without stopping, looking, and listening, and without using ordinary care to first ascertain whether a train was approaching.

"The only allegation in the pleading giving rise to the claim of presumptive negligence upon the part of the plaintiff is the averment that the plaintiff had, for a long period of time, been accustomed to ride on the truck; but there is no allegation that he was accustomed to ride over this particular crossing. It is alleged that the driver failed to stop, look,

and listen for the approaching train; but there is no allegation of peculiar circumstances casting a duty upon the plaintiff of warning the driver or that plaintiff possessed any knowledge of a peril which was imminent, or had reason to believe that he was being placed in a hazardous situation by the conduct of the driver. While the pleading contained charges of negligence against the driver of the truck, the latter's negligence may not be imputed to his guest. Hocking Valley Ry. Co. v Wykle, ante., 391, 171 N. E. 860.

"We are of opinion that the plaintiff's third amended petition contains no allegations from which contributory negligence could be reasonably inferred."

This dissenting opinion has been unduly extended because, it is the view of the writer that the position of a guest rider should be definitely defined and not left to the hazy realm of speculation. If there is a duty on the part of the guest passenger to be constantly on the alert, then let the rule be so definitely stated, so that persons may not continue to repose in the security of trust in the operators of vehicles, whom they have no reason to believe are not fully competent to operate them. If the rule considered applicable by the majority opinion is correct, then it should be stated specifically by our Court of last resort. To simply leave it to the jury, with only the normal vague instructions given, is to mislead that body, as was done here, into false logic and erroneous conclusions.

There are other errors in the record which should be considered beside the one mentioned in the majority opinion. If the case should be considered by the Supreme Court and the writer's conclusions endorsed, upon remand to this Court, such errors can be further considered. It is my conviction that the judgment should be reversed and the case remanded for a new trial.