## Holton *v.* Gibson, Appellant.

38

Argued September 29, 1960.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Stuart A. Culbertson,* with him *Paul E. Allen,* for appellant.

*F. Joseph Thomas,* for appellees.

OPINION BY MR. JUSTICE EAGEN, December 1, 1960:

This appeal is from the entry of judgment after the refusal of the court below to grant defendant's motions for a new trial and for judgment non obstante veredicto in an action of trespass wherein the jury returned a verdict of $24,416.75 in favor of plaintiffs. Appellees are husband and wife, the former alone having sustained personal injury and the latter joined solely because of her rights of partial ownership in the damaged vehicle involved.

At approximately eight o'clock in the evening of October 22, 1954, the husband-plaintiff and the defendant were driving automobiles eastwardly and westwardly, respectively, along Smock Memorial Highway (U. S. Route 322) in Vernon Township, Crawford County, Pennsylvania. Route 322 at its intersection with Mercer Pike is a straight, four-lane, slightly graded highway and thoroughfare, the eastbound and westbound lanes of which are separated by a concrete medial strip approximately two feet in width. Weather conditions then prevailing were good; the road was dry and the night, though dark, was clear. At the time in question, Route 322 was uncontrolled at this junction by the traffic signals appearing there at the time of trial. Mercer Pike, however, was governed by stop signs at this intersection.

According to his testimony, Mr. Holton, hereinafter referred to as appellee, then 57 years of age, ap-

proached the intersection in the northernmost of the eastbound lanes, adjacent to and immediately south of the aforementioned medial strip. He applied his automatic turn signals to indicate an intended left turn to the north and stopped his automobile just west of the end of the medial strip to his left. He had clear vision of over 1000 feet eastward. Before commencing to execute the turn, he waited until two westbound vehicles had cleared the intersection, after which time and while seeing the headlights of defendant's car some 600 to 800 feet east of the crossing, he entered the southernmost of the westbound lanes at a speed of three to five miles per hour in low gear. When his car reached the approximate center of the westbound lanes and was astraddle their division line, he looked to his right and then observed defendant's car some two hundred feet east of the intersection approaching at what he described as an increased speed. The collision occurred immediately after the front end of his car had passed the line at which Mercer Pike meets Route 322. The left front section of defendant's car and the right front portion of appellee's automobile had come into violent contact. According to the defendant's testimony, as he approached the intersection three cars were travelling in the opposite direction in the eastbound lanes. When defendant was within one hundred feet of the intersection, one of these cars suddenly and without warning departed from its lane of traffic and made a "sweeping" left turn, swinging across the highway into the pathway of his automobile. He testified that he ceased accelerating at a point approximately one hundred feet east of the intersection and that, when about twenty-five feet from it, he applied his brakes. In this connection, he testified on cross-examination rather significantly as follows: "Q. The only reason you made no attempt to stop

until you reached the point twenty-five feet from the intersection was because you didn't think it was up to you to do it, is that right? A. That's right. It's a through highway." In an effort to avoid collision, defendant swerved to his right. He had at all times been in the northernmost of the two westbound lanes. Appellant fixed at from forty to forty-five miles per hour the speed at which he had been travelling before becoming aware of appellee's intent to turn north. Behind him, but separated by the vehicle of an unknown motorist, was the automobile of one Mr. Britton who, when called, testified that he had been proceeding at approximately forty to forty-five miles per hour and that the distances between the three cars seemed to remain constant. Appellant's insistence that this testimony is corroborative of his own speed is somewhat impaired by the following testimony of Britton, given on cross-examination: "Q. And you weren't paying any attention to the speed of the lead (Gibson) car at the time that you saw the lights of this (appellee's) car turning left, either, were you? A. No, but I had been prior to that. Q. I said at that time you weren't? A. No. Q. You have already said you don't know whether it increased or decreased its speed after it went around the curve. You said that, too, didn't you? A. Yes."

Several alleged trial errors are assigned in support of the motion for new trial. It is strenuously argued that the verdict was against the weight of the evidence and that the amount thereof was excessive; that plaintiff should not have been allowed to testify that when he saw defendant's car approximately two hundred feet away it was then approaching at an increased speed; that, because plaintiff failed to prove an actual diminution in wages subsequent to his return to work and resulting from the accident, the court should not have

instructed the jury that it could award a sum for loss of earning capacity; that the jury should have been instructed to disregard an argument made by appellee's counsel in his summation and based on an assumption of speed for which there was no direct support in the testimony; that the jury could not have given the case due deliberation because "it was out for less than an hour"; and, that appellee's failure to institute his suit until three days before the running of the Statute of Limitations is consistent only with an inability of plaintiff to recall, even at the time of trial, the various circumstances surrounding the happening of the accident.

After a careful consideration of all of the above listed assignments of error, we are convinced that they are without merit. The sole ground advanced in support of appellant's motion for judgment n.o.v. is the contention that appellee was contributorily negligent as a matter of law.

Needless to say, in considering a motion for entry of judgment against the verdict winner, the latter is entitled to the benefit of every favorable fact and inference fairly deducible therefrom: *Smith et al. v. Pachter,* 342 Pa. 21, 19 A. 2d 85 (1941); *Thompson v. Gorman,* 366 Pa. 242, 77 A. 2d 413 (1951). Also, contributory negligence as a matter of law should be declared only in a very clear case and where the only reasonable inference of the evidence in plaintiff's own case shows want of due care: *Lear v. Shirk's Motor Express Corp.,* 397 Pa. 144, 152 A. 2d 883 (1959). Under these standards, the question of contributory negligence in this case was for the jury. Appellee was not bound to anticipate the negligence of the defendant: *Richards et ux. v. Warner Company et al.,* 311 Pa. 50; 166 Atl. 496 (1933). In *Lookatch v. Robinson,* 318 Pa. 545, 179 Atl. 66 (1935) we held that a driver

of an automobile was not guilty of contributory negligence as a matter of law merely because he started, at right angles, across a thirty-five foot wide highway without waiting for an automobile, then three hundred feet away, to pass in front of him, there being no other vehicle between the two cars.

Counsel for appellant vigorously contends that appellee, while in the middle of the westbound lanes and when defendant was, according to appellee's testimony, some two hundred feet east of the intersection, should have stopped, astraddle the division line of the two westbound lanes. We think that would have been an unwise choice of alternatives. There is no evidence as to the length of appellee's automobile, though we know the total width of the two westbound lanes to have been twenty-four feet. A car in dead center would, we think, be a difficult one to avoid. Appellee, already unalterably committed to the intersection, might sufficiently have cleared it by proceeding northward so as to provide an unobstructed passage, to his rear, to the automobile which was then two hundred feet distant from the junction. In any event, appellee had reason to believe before entering the intersection that he could proceed therein in safety in light of his testimony that at the time he commenced his turn defendant was 600 to 800 feet away. Whether, while astraddle the division line of the westbound lanes, he should have stopped was purely a question of fact for the jury and, as the able manner in which the case was tried leads us to conclude, was doubtless argued at the trial.

Now, as to the motion for new trial, we agree with the lower court that appellee's failure to show a diminution in wages, subsequent to his return to work (approximately three months after the accident) did not make improper the court's submission to the jury of the issue of loss of earning power or capacity. Appel-

lee at the time of trial was out of work and, although his unemployment was not shown to have been due to his injuries, it was shown that he continued to suffer, since the date of the accident, from severe headaches which, when visiting him during work, had necessitated his taking unauthorized rests for "half an hour or so." The injury to his leg caused him pains which persisted even to the date of trial and which then were occurring, as he put it, "when I am on my leg considerable." Moreover, the surgery to his head resulted in the removal of skull structure, the absence of which renders one more prone to suffer from later slight injury. As this Court said in *Bochar v. J. B. Martin Motors, Inc.,* 374 Pa. 240, 244, 97 A. 2d 813 (1953): "A tortfeasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, the wages of the injured person following the accident are as high or even higher than they were prior to the accident. . . . It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injuries sustained as the result of the tortfeasor's negligence? That is the test. And it is no answer to that test to say that there are just as many dollars in the patient's pay envelope now as prior to his accident. The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages." Appellee, in the instant case, was no longer able to inspect the various stations that it was his duty to check as guard. He was relegated to the role of telephone message taker. As of the date of trial he had not yet been

able to drive an automobile. Out of work at that time, his "economic horizon" was necessarily less broad than it would have been but for the accident. The fact that immediately after his return to work his pay scale had not been cut and the fact that he later received customary periodic pay increases does not obscure the inescapable conclusion that he is now, as a result of his injuries, less able to perform certain services that, but for the accident, he would readily accept as incident to desirable employment.

Appellee's testimony with respect to appellant's increased speed when the latter was about two hundred feet from the intersection was admissible. While, as the lower court recognized, references by a witness to speed as "fast" are improper because of their conclusory nature, it seems entirely proper for a witness, having observed the speed of an oncoming car some 600 to 800 feet away, to testify that when he made another observation of the approaching automobile it was travelling at an increased speed. Testimony of the latter kind is of a factual nature and is therefore properly admissible.

Appellant charges that the references by appellee's counsel to an assumed speed of sixty miles per hour for purposes of showing distances travelled per minute were improper and prejudicial. It seems clear from the record that the lower court, at least, did not believe that counsel was intimating to the jury that defendant had been *travelling* at that speed. When counsel for defendant interrupted the closing argument to the jury by counsel for appellee and raised his objection to this reference to speed, the trial court appropriately ruled: "The objection is overruled, because we do not understand Mr. Thomas is saying that any witness said that the car was going sixty miles an hour, but he is asking the jury to infer it might have been going

that fast because of the circumstantial evidence in the case." We do not have the pertinent quotations of counsel's remarks before us and, accordingly, cannot conclude that an improper suggestion was being made: *Holden v. Pennsylvania Railroad*, 169 Pa. 1, 32 Atl. 103 (1895); *Guckavan v. Lehigh Trac. Co.*, 203 Pa. 521, 53 Atl. 351 (1902). Rather does the opinion of the lower court indicate that counsel was arguing that the jury could conclude that defendant was travelling at a greater speed than forty-five miles per hour because of certain physical evidence in the case (the defendant's car, following the accident, came to rest approximately sixty feet west of the westerly edge of Mercer Pike and skid marks, beginning in the north lane of the westbound side of the Smock Memorial Highway and extending over Mercer Pike and onto the dirt ground west of the Pike, were estimated to have been eighty to ninety feet long). We feel that, under the circumstances, counsel remained within bounds in showing how far *a* car *would* travel at an assumed speed. Although defendant's testimony as to his speed was uncontradicted, it was still a point which the jury could accept or refuse. However, as indicated above, since there is no showing that counsel, in closing, gave the speed of the vehicle as having been in fact more than forty-five miles per hour, and since we do not have counsel's remarks before us, we cannot conclude that prejudice to defendant resulted.

Appellant strongly contends that substantial variances exist between appellee's testimony on the trial and that given by him as a pre-trial deponent. We strongly disagree. It should suffice to say that we rather regard the excerpted portions of the depositions to be, in the main, entirely consistent with appellee's testimony at trial. In those few particulars where discrepancies might be said to exist between the two,

they are patently minor and were, apparently, so regarded by the jury. Certainly, they do not constitute such substantial differences as would warrant an appellate court to conclude that reversal is in order.

Also argued was the bearing that appellee's failure for almost a year to remember the details surrounding the accident had on his credibility as a witness at trial. This inability to recall the circumstances of the collision was caused by the injuries suffered as a result therefrom. But, here again, is an issue which, bearing as it does on appellee's credibility, the jury had before it and must be said to have resolved in appellee's favor. It is enough for us to note that we do not consider this long, pre-trial lapse of memory to have rendered appellee's testimony unworthy of belief. It was clearly shown that his memory did return to him not suddenly but gradually. Having read his testimony carefully, we can unhesitatingly say that its clarity is impressive.

Finally, appellant contends that the verdict is excessive. We conclude otherwise. Appellee was hospitalized immediately after the accident for about five weeks, the first three and a half of which he spent in unconsciousness. He was confined to bed for two weeks after his transfer by ambulance to his home. He had a depressed skull fracture of the left temporal parietal region with an underlying contusion of the brain. The injuries to his knee were such that his leg, at the time of trial (some three and a half years after the accident) still caused him pain and weakness. While his actual, presently probable losses, including loss of wages, medical bills, damage to the Holton car, etc., amounted to approximately $4,150, appellee underwent three operations on his head and the defect in his skull structure is one which, according to the testimony of one of the doctors called, is permanent, be-

48

cause the skull bone will not replace itself. Following his bed confinement, plaintiff moved around first by wheel chair, then by crutches, then by cane (for months), finally unassisted. The severity of his injuries is clearly indicated by the effect they had on his memory, which was impaired for so long a period following the accident. At the time of trial, as pointed out above, he had not yet begun to drive again. In light of the above, we find it impossible to hold the sum awarded appellee by the jury to have been shockingly disproportionate to the injuries and losses suffered. Accordingly, we will not disturb it.

The judgment of the lower court is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

In a determination of liability, it is often difficult but nevertheless necessary not to be swayed by natural sympathy for a person who has been badly injured. I would enter judgment for defendant non obstante veredicto.