## Tournier v. Gretz

*Foulke, Knight, Stefan & Timoney*, for plaintiffs.
*William R. Cooper*, for defendant.

DITTER, J., January 23, 1967.—This matter comes before the court on post trial motions in a trespass action arising from an accident involving a police car which had been pursuing defendant's vehicle.

Actually, there were three suits for personal injury and property damage resulting from this occurrence in which two policemen were injured and the police vehicle extensively damaged. The car in question was owned by Springfield Township and driven by Officer Albert C. Elms, who was accompanied by Officer Raymond J. Tournier. While pursuing a vehicle owned by defendant Davis, and driven by defendant William Gretz, 4th, the police car collided with a bridge abutment and telephone pole. Elms, Tournier, and Springfield Township sued Davis and Gretz, and the actions were consolidated for trial. The jury returned a verdict in favor of plaintiff Raymond J. Tournier in the sum of $9,363 against William Gretz, and against plaintiffs, Albert Elms and Springfield Township in favor of the defendant Gretz. In all actions, the jury was directed to find for the defendant, Robert A. Davis, Jr., owner of the car Gretz was driving. Both Gretz and Elms filed motions for a new trial and judgment n.o.v., but Elms abandoned his at the time of oral argument.

The facts are not in dispute and may be summarized as follows: On March 4, 1961, at or about 2:00 a. m., Officers Tournier and Elms, of the Springfield Town-

ship Police Department, were on routine patrol in a marked township police car driven by Officer Elms. After turning off the Route 309 Expressway, the officers proceeded west on Paper Mill Road following a 1961 Ford convertible which was being preceded by another police car. There was nothing unusual to draw the officers' attention to the Ford at that time. However, after the first police car turned into the police station, the Ford began to accelerate. Travelling west along Paper Mill Road, the Ford convertible, driven by defendant William Gretz, 4th, continued to increase its speed to approximately 70 miles per hour, with the police car giving chase. At the intersection of Paper Mill Road and Bethlehem Pike, Gretz went through the stop sign, turned right onto Bethlehem Pike, and extinguished his lights. Thereafter, defendant's auto went approximately two blocks, turned right onto Hillcrest Avenue, then right onto Park Avenue, followed by another right onto Bells Mill Road and finally out to Bethlehem Pike again. With the police still continuing their pursuit, Gretz headed north on Bethlehem Pike. The road was under construction at Bethlehem Pike and Gordon Road and, as the officers attempted to round the curve at the bottom of the hill, their car went out of control and struck a bridge abutment and a telephone pole. Continuing his escape, defendant, having observed another police car waiting on Bethlehem Pike, abruptly cut through a supermarket parking lot and out onto Haws Lane. Officers Kelly and Dematteo, who had received a call for assistance from Officer Tournier, promptly took up the pursuit. However, upon receiving a radio report of the accident, they broke off the chase and proceeded to its scene. Later that morning, Mr. Gretz was apprehended at his home and thereafter gave a full statement indicating his actions in this episode.

Defendant has not alleged any specific trial errors

in support of his motion for a new trial, but has chosen to rely upon the general grounds that the verdict is against the evidence, the weight of the evidence, the law, and the charge of the court.

Basically, it is defendant's contention, as previously raised on demurrer, that the facts of this case do not provide a legal basis for judgment in plaintiff's favor. More specifically, defendant contends that he owed no duty to plaintiffs; that his conduct does not constitute negligence; that his actions were not the proximate cause of plaintiffs' injuries; and that, in any event, plaintiffs were contributorily negligent.

Defendant's counsel vigorously contends that defendant's violations of the traffic statutes do not constitute negligence per se unless the accident was the result of the hazard contemplated by the statute. We agree with this proposition of law, but we cannot agree that the statutes involved herein were solely intended to protect the innocent driver ahead of the speeder. It could well have been within the contemplation of the legislature to protect the vigilant police officer who pursues a speeder in the line of duty. In any event, these violations are not the sole basis of negligence in this case as evidenced by the charge to the jury on this issue. The court stated:

"The test that the law has set up to guide a jury is this: Negligence is the absence or want of that due care which a reasonably prudent man would exercise under the circumstances.

"Conduct is only negligent if the harmful consequences thereof could reasonably have been foreseen and prevented".

The testimony clearly reveals that defendant took deliberate evasive actions in an effort to escape the pursuing police car. In light of defendant's knowledge that he was being pursued, the inference is inescapable that his actions were taken to confuse the officers

and to increase their difficulties in apprehending him.

Since the rule of Palsgraf v. Long Island R. R. Co., 248 N. Y. 339 (1928), was adopted in this Commonwealth, it has been held that a legal duty arises which is commensurate with the foreseeable harm when a perilous condition is created by the unreasonable conduct of defendant: Dahlstrom v. Shrum, 368 Pa. 423 (1951). In the Palsgraf case, supra, Judge Cardozo stated at page 344:

"The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension [citations omitted]".

In speaking of the duty which is imposed by law, Chief Justice Maxey, in the now famous case of Bisson v. John B. Kelly, Incorporated, 314 Pa. 99 (1934), stated at page 110:

"It is a primary social duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen. The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty".

Clearly, the question of negligence was for the jury. Under the preceding authority and the charge of the court, we have no difficulty holding that the jury had ample evidence upon which to base its finding that defendant did not conduct himself as a reasonably

prudent man would and that defendant could reasonably have foreseen that harm would befall plaintiffs.

Defendant next contends that his actions were not the proximate cause of plaintiff's injuries. In this regard, the jury was instructed that:

"The proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new independent cause, produces that event and without which that event would not have occurred. To constitute proximate cause, an act must be such as to probably result in harm. A cause would be remote and not proximate if the injury complained of was an unlikely or improbable consequence thereof".

In Anderson v. Bushong Pontiac Company, Inc., 404 Pa. 382, 391 (1961), the court stated:

". . . the question of proximate cause of an accident is almost always one of fact for the jury. As stated in Nelson v. Duquesne L. Co., supra, at pp. 54, 55, [338 Pa. 37 (1940)]: 'In section 453 of Pennsylvania Annotations to the Restatement of Torts, the following appears: "It is not uncommon to have a situation where there may be a reasonable difference of opinion as to whether the actor's conduct was a substantial factor in bringing about the harm, and it frequently occurs that where intervening forces have come into operation there may be a reasonable difference of opinion as to whether they were extraordinary or normal. If there is room for such a reasonable difference of opinion, the question of legal cause is for the determination of the jury [citing 14 Pennsylvania cases] . . ."'"

The aforequoted statement is most apposite. Defendant argues that the construction work acted as a superseding cause of plaintiffs' injuries, thus removing his actions as the legal or proximate cause of plaintiffs' injuries. The mere fact that other forces may have intervened does not automatically break the chain of causation or absolve defendant of the conse-

quences of his actions. The facts herein are susceptible to a reasonable difference of opinion; accordingly, the question was properly for the jury. In Brechtel v. Lopez, 140 S. 2d 189 (La. App. 1962), the Court of Appeal of Louisiana, when presented with a similar factual situation, stated at page 193:

"In our opinion the proximate cause of the accident was speed, the grossly excessive speed of young Lopez which induced the speed of the police, who not only had the right but the duty to attempt to overtake and apprehend him. The effect of the speed continued down to the very moment of the accident. Speed, if not the proximate cause of the accident, was at least a concurring cause with the 'grabbing' of the brakes which in our opinion was not unrelated thereto".

We find this issue to have been properly submitted to the jury and find nothing arbitrary or capricious in its decision.

Although a thorough review of the law in Pennsylvania fails to reveal any authority directly on point, several jurisdictions have passed upon this situation and allowed the pursuing police officer to recover from the pursued. See McKay v. Hargis, 351 Mich. 409, 88 N. W. 2d 456 (1958); Brechtel v. Lopez, supra. In City of St. Petersburg v. Shannon, 156 S. 2d 870 (Fla. App. 1963), the Florida Court reversed a lower court's dismissal of an action for personal injuries and property damage arising out of a similar police chase accident.

Defendant further contends that, in any event, plaintiffs were guilty of contributory negligence and, therefore, no verdict can be allowed to stand. The circumstances in this case clearly fail to warrant the conclusion that plaintiffs were guilty of contributory negligence as a matter of law, as defendant would have us hold, because "To do this 'requires evidence of contributory negligence which is so clear and palpable that there is no room for fair and sensible men to

differ in their conclusions:' *Elbell v. Smith,* 357 Pa. 490, 494, 55 A. 2d 321 (1947)" : Mutter v. Slaymaker, 404 Pa. 369, 374 (1961).

Plaintiffs in this action were police officers who, in the line of duty, were pursuing a fleeing law violator. The traffic regulations imposed upon an ordinary motorist are generally relaxed in the case of an ambulance, police or fire vehicle in time of emergency. The Vehicle Code of April 29, 1959, P. L. 58, sec. 1002(f), as amended, 75 PS §1002(f), provides, inter alia:

"(f) The speed limitations set forth in this section shall not apply to vehicles, when operated with due regard for safety, under the direction of the police in the chase or apprehension of violators of the law, or of persons charged with or suspected of any such violation. . . . The exemption shall not, however, protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others".

Similar exemptions exist for a police vehicle operated in an emergency situation with respect to traffic signals (section 1028(d), 75 PS §1028(d)); entries upon through highways and stop intersections (section 1016(d), 75 PS §1016(d)); and right of way (section 1014(b), 75 PS §1014(b)). Section 500 of the Restatement, Torts, quoted with approval in Merkel v. Scranton, 202 Pa. Superior Ct. 15 (1963), defines reckless disregard of the safety of others as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him".

Did Officer Elms and/or Officer Tournier act with a reckless disregard for the safety of others and there-

by lose the exemptions afforded by the statute, or did the officers act as carefully as their duties would allow in the emergency situation? The question was a complex one for the jury to decide and its decision, if supported by ample evidence, will not be lightly set aside.

The jury apparently found Officer Elms, the operator of the police car, guilty of contributory negligence, and thus returned verdicts against both Elms and the township. This verdict is consistent with the facts adduced at trial, especially in light of Officer Elms' own testimony that he proceeded with the chase with knowledge of the construction work.

The jury returned a verdict in favor of Officer Tournier. This verdict is also consistent with and supported by the evidence. The testimony indicates that Officer Elms, the senior officer, was behind the wheel, while Officer Tournier was engaged on the radio reporting their activities and requesting assistance. Defendant asserts that the officers were on a joint enterprise and, therefore, Officer Elms' negligence must be imputed to Officer Tournier, thus barring any recovery by either. Although the officers' activities may resemble certain aspects of a joint enterprise, the key thereto, and to imputed negligence, is the right to control, or to share control, and such is not established by the evidence in this case.

Defendant's final argument is that the court erred in submitting the question of compensation for loss of future earning power to the jury, and that the jury's award of $6,000, therefore, is excessive. In support of this position, defendant contends that there is no evidence of diminution in earning power, especially in light of the fact that Officer Tournier is presently receiving greater income than at the time of the accident. The record in this case clearly reveals that, as a result of this accident, he sustained a severe laceration and permanent injury to the cervical spine, resulting

in a 20 percent limitation in ability to rotate his neck. The law in this area has been elaborated in Holton v. Gibson, 402 Pa. 37 (1960), quoting the leading case of Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 244 (1953), as follows:

"A tortfeasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, the wages of the injured person following the accident are as high, or even higher than they were prior to the accident. . . . It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injuries sustained as the result of the tortfeasor's negligence? That is the test. And it is no answer to that test to say that there are just as many dollars in the patient's pay envelope now as prior to his accident. The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages".

Does the record contain sufficient evidence to warrant the jury's award for loss of earning capacity? Mr. Tournier is a police officer by profession. In addition to the testimony of Chief Kayser, of the Upper Dublin Township Police Department, that an individual without Tournier's limitations would be preferred for hiring and promotion, plaintiff testified as follows:

"Q. Now, when you returned to work were you able to perform your duties as you did before the accident?

"A. No, sir.

"Q. What changes did you find in your ability to do your job?

"A. Well, the most important change was my neck. In operating a police car, you find numerous occasions

when you must back the vehicle up, and this I couldn't do unless I turned my entire body around, sort of hung out the window. I couldn't just turn my head and look out like everybody else does. I had to turn my body completely around".

There is also medical testimony to the effect that his physical limitations would impair Officer Tournier's earning capacity. The r e c o r d supports the jury's award, and we see no reason to disturb it.

In summary, the charge adequately and fairly presented the issues and the law to the jury, and their findings are amply supported by the evidence. Defendant has failed to establish any basis for a new trial, and clearly his motion for judgment n.o.v. must be dismissed when the evidence is considered in a light most favorable to the verdict winner.

And now, January 23, 1967, defendant's motion for new trial and judgment n.o.v. is hereby dismissed.