## Poet v. Johnson

*Carl B. Stoner, Jr.,* for plaintiff.
*Richard W. Cleckner,* for defendant.

CALDWELL, *J.*, January 27, 1982—We have for consideration defendant's post-trial motions, filed following a jury verdict rendered on December 11, 1980.

Plaintiff's claim arose from an automobile accident on June 9, 1977, and plaintiff and defendant were both determined by the jury to be negligent. Liability was apportioned at 90 percent on the part of defendant and 10 percent by plaintiff. The verdict totalled $20,000 and the jury indicated that $10,000 of the total was to compensate plaintiff for loss of earning capacity. Defendant complains that there was insufficient evidence to present the issue of impaired earning capacity to the jury, or to support an award for such damages. In addition defendant contends a claim for impairment of earning capacity cannot be presented in a trespass action.

In evaluating a claim for loss of earning capacity the appropriate inquiry is whether the economic horizon of the injured party has been shortened as a result of defendant's negligence. "The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages." Holton v. Gibson, 402 Pa. 37, 44, 166 A. 2d 4, 8 (1960). Evidence that a plaintiff has suffered no decrease in wages following an accident is not in itself a bar to a claim for impaired earning capacity, as might be the case if the claim were for lost wages: Id. at 43. To the contrary, past earnings are only *one* of many factors to be taken into consideration when analyzing lost earning capacity: Hrabak v. Hummel, 55 F. Supp. 775 (E.D.Pa. 1943).

The case of Marryshaw v. Nationwide Mutual Insurance Co., 13 D. & C. 3d 172 (1979), cited in

defendant's brief, clearly refutes her contention that evidence of the past earnings of plaintiff is absolutely crucial to support an award of lost earning power. There the court held that a 19 year old college student may be able to recover damages for impaired earning capacity despite the fact that she had never been gainfully employed.

In the instant plaintiff presented more than ample evidence to support the jury's verdict. Plaintiff testified that she was 61 years old on the date of the collision and that her formal education ended at the eighth grade. She worked at a hospital from March 26, 1976, until June 9, 1977, the date of the collision. Her work required her to transport patients to and from the x-ray department and required heavy pushing and lifting. For the 22 years preceding her employment at the hospital Mrs. Poet was a waitress. While employed in these two positions she missed no work due to illness, and before the collision was physically active, did her own shopping and housework, and played bingo. Now her activities are restricted to doing a few dishes and her daughter and son do the housekeeping. Mrs. Poet also stated that she has the greatest difficulty with walking and must use a cane, however, she does experience foot and back pain, even while sitting.

Plaintiff's treating physician testified that she is suffering from traumatic arthritis of the right ankle and foot, and that the pain in her back and buttocks is caused by walking on the side of her foot. When asked whether Mrs. Poet's physical activities have been restricted as a result of these injuries, the doctor replied:

"She is unable to work at her past position. I don't know . . . how she could work with her disability. In any other joint, if it would have been the shoulder, if

her feet were good, she could walk around. She couldn't go back to her old position because that's heavy work, lifting people out of bed onto stretchers and down to x-ray and lifting them out to something else."

" . . . she has improved somewhat since the start . . . but my prognosis is very dark. She will have to take some kind of treatment as long as she lives and she'll have to be careful on her activities as long as she lives."

We fail to see how Mrs. Poet could have established a more complete record for an award for lost earning capacity.

In connection with her second objection defendant contends a claim for lost earning capacity is included within the concept of "work loss," as defined in section 103 of the Pennsylvania No-fault Motor Vehicle Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.103, and is compensable only through plaintiff's insurance company.

Although the No-fault Act abolishes tort liability for certain types of claims it is not clear whether the common law action for impaired earning capacity has been spared. Nor is there any appellate authority on this question.

Section 301 of the No-fault Act, 40 P.S. § 1009.301, abolishes tort liability for injuries sustained in collisions occurring within the Commonwealth, with limited exceptions. Subsections (4) and (5) provide:

"(4) A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. A person is not liable for loss which is not compensated because of limitations in accordance with subsection (e) of section 202 of this act.

"(5) A person remains liable for damages for non-economic detriment if the accident results in: (A) death or serious and permanent injury; . . ."

According to section 202(b), 40 P.S. § 1009.202(b), "work loss," (as defined in section 103), is a "basic loss benefit" recoverable from a no-fault insurer up to a maximum of $15,000. The question remains whether damages for impaired earning capacity are included in the statutory definition of "work loss," which is defined as follows: "(A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act; and (B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, . . ."

Section 205, 40 P.S. § 1009.205, further refines this definition by providing calculations for those who, prior to their injuries, were regularly employed, seasonally employed, and not employed. Since plaintiff was employed we will limit our inquiry to whether one in her position is recompensed for loss of earning power by the definition of work loss for the "regularly employed." Section 205 defines the "regularly employed" as " a victim whose income prior to the injury was realized in regular increments." The work loss of such a person is calculated by: "(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and (2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period."

Subsection (d)(A) of section 205 defines "probable annual income" for a victim regularly employed at the time of the accident as "twelve times the monthly gross income earned by the victim from

work in the month preceding the month in which the accident resulting in injury occurs, or the average annual income earned by the victim from work during the years, not to exceed three, preceding the year in which the accident resulting in injury occurs, whichever is greater, . . ."

We think it rather obvious that the calculation of "work loss" for the regularly employed is based on a determination of actual lost earnings, or "lost wages" under the common law. This concept fails to consider any of the other factors which are critical in determining if a person's "economic horizon" has been shortened, that is, whether he has suffered damage to his earning capacity. Although there are several county court cases which allude to the problem posed here, there are no definitive decisions to guide us.[*]

We think an analysis of the applicable provisions of the act leads to the conclusion that where a person is regularly employed, within the meaning of the act, a tort feasor remains liable for the impairment of earning capacity suffered by an injured party, and we so hold. Subsection 5(A) of section 301, 40 P.S. §1009.301, retains tort liability for "non-economic" detriment if an automobile collision results in death or serious and permanent injury. The evidence presented at trial established beyond a doubt that Mrs. Poet falls within the latter category. The term "noneconomic detriment" is defined in section 103, 40 P.S. §1009.103, as "pain, suffering, inconvenience, physical impairment, and other non-pecuniary damage recoverable

---

[*]Theal v. Confer, 7 D. & C. 3d 614 (1978); Merryshaw v. Nationwide Mutual Insurance Co., 13 D. & C. 3d 172 (1979); Werner v. Capital Area Transit, 30 Cumberland 111 (1980).

under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. The term does not include punitive or exemplary damages."

There is no dispute that one of the primary purposes of the No-fault Act is to provide a quick and adequate recovery for immediately identifiable economic losses suffered by persons involved in motor vehicle accidents. Tort liability has been abolished for expenses such as lost wages, medical bills, rehabilitation expenses, funeral costs and the like. These items are readily ascertainable, usually unassailable and cause comparatively little controversey, at least as contrasted with claims for intangible losses such as pain and suffering or loss of cosortium, which are not abolished by the Pennsylvania No-fault Motor Vehicle Act. The evaluation of a claim for impaired earning capacity requires an analysis of many factors such as age, health, habits, life expectancy, business and business habits, and past employment and earnings, and such an award is analogous to the type of damage claims that survived the enactment of the No-fault Act. As the legislature has not expressly addressed the issue, and on the basis of the above discussion, we conclude and hold that tort liability for loss of earning capacity has not been abolished by the Pennsylvania No-fault Motor Vehicle Act and that defendant is liable for such damages.

## ORDER

And now, January 27, 1982, defendant's post-trial motions are denied and dismissed.