J-A02008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHAUN BITNER AND LORI BITNER, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 955 MDA 2018 |
| JONAS SHEEHAN, M.D., T. THOMAS ZACHARIA, M.D. AND THE MILTON S. HERSHEY MEDICAL CENTER D/B/A PENN STATE MILTON S. HERSHEY MEDICAL CENTER D/B/A MILTON S. HERSHEY MEDICAL CENTER PHYSICIANS GROUP, PENN STATE HERSHEY RADIOLOGY | : | |

Appeal from the Judgment Entered June 5, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2016-CV-2239-MM

\*\*\*\*\*

| | | |
|---|---|---|
| SHAUN BITNER AND LORI BITNER, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 956 MDA 2018 |
| JONAS SHEEHAN, M.D. AND THE MILTON S. HERSHEY MEDICAL CENTER D/B/A PENN STATE MILTON S. HERSHEY MEDICAL CENTER D/B/A MILTON S. HERSHEY MEDICAL CENTER PHYSICIANS GROUP | : | |

J-A02008-19

Appeal from the Judgment[1] Entered June 5, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2015-CV-1861-MM

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 12, 2019**

Shaun Bitner and Lori Bitner (h/w) (collectively, "the Bitners") appeal from the judgment, entered in the Court of Common Pleas of Dauphin County, following the denial of their motion for post-trial relief in this medical malpractice action.  After careful review, we affirm.[2]

On March 11, 2015, the Bitners filed a professional liability complaint (2015-CV-1861-MM) against Jonas Sheehan, M.D., and The Milton S. Hershey Center[3] d/b/a Penn State Milton S. Hershey Medical d/b/a Milton S. Hershey Medical Center Physicians Group (collectively, "Hershey Medical Center").  On March 17, 2016, the Bitners filed a second complaint against the original defendants in the first action and added T. Thomas Zacharia, M.D., and Penn State Hershey Radiology as defendants.  Collectively the complaints alleged

---

[1] Although the Bitners' notices of appeal state that they are appealing from the order denying their post-trial motions, an order denying a post-trial motion is not appealable until the order is reduced to a judgment.  Because the order was ultimately reduced to judgment and the notices of appeal were filed within 30 days of that date, the appeal is timely.  ***Taxin v Shoemaker***, 799 A.2d 859 (Pa. Super. 2002).

[2] We, herein, grant the Bitners' application for post-submission communication.

[3] At all relevant times, Hershey Medical Center employed both Doctors Sheehan and Zacharia.

negligence, vicarious liability, and loss of consortium related to events surrounding Mr. Bitner's March 2014 back surgery and post-operative care. In their complaints, the Bitners sought damages for medical expenses, work loss and loss of earning capacity, pain and suffering, loss of life's pleasures and future losses.

The complaints allege that on March 25, 2014, Dr. Sheehan performed an L4-5 laminectomy and fusion on Mr. Bitner's back. Mr. Bitner had been experiencing lower back pain and radiating bilateral leg pain for years and was not able to manage the pain long-term with epidural injections. Following surgery, Mr. Bitner was put on a high dose of pain medication. Despite the medication, Mr. Bitner experienced excruciating headaches and, in a matter of days after surgery, became unable to walk. Nevertheless, Mr. Bitner was discharged from the hospital and, because of his inability to walk unaided, was confined to his bed at home. When the pain level became intolerable later on the day of his discharge, Mr. Bitner's daughter called 9-1-1 and he was taken to the emergency room where he was readmitted to the hospital. After being readmitted to Hershey Medical Center, an MRI was performed on Mr. Bitner. Doctor Zacharia, a diagnostic radiologist, interpreted the lumbar MRI and allegedly failed to recognize fluid collection posteriorly, as well as protruding dorsal dura. Mr. Bitner remained in the hospital until April 2, 2014, when he was again discharged despite the fact that he was still experiencing pain and had severe mobility issues.

Mr. Bitner consulted with another doctor, Dr. Perry Argires, who performed additional surgeries on Mr. Bitner in an attempt to resolve the issues that allegedly resulted from his March 2014 surgery and post-surgical care. During a December 2014 surgery, Dr. Argires removed misplaced pedicle screws and discovered a dural leak and protruding nerve rootlets. Mr. Bitner also alleged that during his March 25, 2014 surgery performed by Dr. Sheehan, he suffered a dural tear[4] that extended to the arachnoid layer and was improperly repaired. Finally, Plaintiffs contended that Dr. Sheehan failed to perform a foraminoctomy, a procedure to ease pressure on spinal nerves. To date, Mr. Bitner remains in pain, cannot walk properly or resume his pre-surgery activities, and is physically limited in his role at his self-owned and operated carpentry business, being confined to a managerial position.

Defendants, Dr. Zacharia and Hershey Medical Center filed a motion and partial motion for summary judgment, respectively. On November 29, 2017, the trial court heard oral argument and granted the Defendants' motions. In December 2017, the remaining Defendants proceeded to trial; the jury returned a defense verdict, concluding that Dr. Sheehan was not negligent. The Bitners filed post-trial motions that the trial court denied, following

---

[4] A dural tear is one of the most common complications of spine surgery in which the thin covering over the spinal cord, the dura mater, is nicked by the surgeon's instruments. https://www.verywellhealth.com/cerebrospinal-fluid-leak-and-dural-tears-296512 (last visited 2/5/19).

- 4 -

argument, on May 16, 2018. Final judgment was entered in favor of Defendants on June 5, 2018. The Bitners filed timely notices of appeal[5] and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The Bitners present the following twelve issues for our consideration:

(1) Whether the trial court erred in allowing defense expert Dr. Arnold to testify at trial and give his opinion when the opinions and facts provided in the supplemental answers to Plaintiffs' interrogatories prepared by defense counsel and signed by Dr. Arnold failed to satisfy Pa.R.C.P. 4003.5 and Pa.R.E. 705.

(2) Whether the trial court erred in allowing Dr. Gupta to testify and give his opinions when his opinions went beyond the scope of his expert reports provided to Plaintiffs.

(3) Whether the trial court erred in granting Defendants' motion *in limine* precluding Plaintiffs from presenting testimony as to conversations between Plaintiffs and healthcare providers, virtually all of whom were employees or agents of the Milton S. Hershey Medical Center, a defendant, as the conversations fit within well-recognized exceptions to the rule against hearsay.

(4) Whether the trial court erred in refusing to give an instruction regarding any potential harm caused by subsequent treating provider, Dr. Argires.

(5) Whether the trial court erred in allowing improper habit or routine practice evidence to be admitted to form the basis of why Defendant Sheehan was not negligent.

---

[5] As previously noted, the Bitners filed two separate complaints in this medical malpractice action. The two cases were tried together and the trial court issued a single order denying post-trial motions on both dockets. In compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. Super. 2018), the Bitners filed two separate notices of appeal in the trial court. **See** Pa.R.A.P. 341 (when single order resolved issues arising on more than one lower court docket, separate notices of appeal must be filed).

(6)     Whether the trial court erred in granting Defendants' motion *in limine* precluding Plaintiffs from presenting [S]ocial [S]ecurity [D]isability records.

(7)     Whether the trial court erred in failing to permit Plaintiffs' counsel the opportunity to read an MRI report of October 2014, in his closing.

(8)     Whether the trial court erred in failing to allow Plaintiffs an opportunity to amend their complaint to add additional claims based upon Plaintiffs' expert reports.

(9)     Whether the trial court erred in limiting Plaintiffs' use of the deposition of Dr. Argires dated July 14, 2017, after Defendant waived all objections by not properly raising them at the time of deposition.

(10)    Whether the trial court erred in refusing to allow Dr. Argires to testify as to things he would have done differently.

(11)    Whether the trial court erred in allowing Defendants' economic expert to testify as to Mr. Bitner's past and future economic loss based on income tax returns from Mr. Bitner's business.

(12)    Whether the trial court erred in failing to allow Plaintiffs' actuary expert to use his second report completed on October 30, 2017.

Appellants' Brief, at 4-6.

In ***Zaleppa v. Seiwell***, 9 A.3d 632 (Pa. Super. 2010), our Court set forth the standard of review of a trial court's denial of a motion for post-trial relief as follows:

Our review is limited to determining whether the trial court abused its discretion or committed an error of law. ***See Paliometros v. Loyola***, [] 932 A.2d 128, 132 (Pa. Super. 2007). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Stalsitz v. Allentown Hospital, et al.***, [] 814 A.2d 766, 771 (Pa. Super. 2002) (citations omitted)[.] "If the alleged mistake concerned an error of law, we will scrutinize for legal

error." **Paliometros**, **supra** at 132 (citation omitted). "On questions of law, our standard of review is *de novo* and our scope of review is plenary." **Straub v. Cherne Industries**, [] 880 A.2d 561, 566 (Pa. 2005).

**Id.** at 635 (headnotes and pagination omitted; emphasis in original).

The Bitners first contend that the trial court erred in permitting defense expert, Dr. Paul M. Arnold, to testify at trial where his opinions and the facts provided in supplemental answers to Plaintiffs' interrogatories did not comply with Pa.R.C.P. 4003.5 and Pa.R.E. 705. Specifically, the Bitners claim that the defense did not provide any expert reports from Dr. Arnold and, in fact, defense counsel provided answers for the doctor which the doctor only "signed off on." Appellants' Brief, at 14. Because the answers to interrogatories were not his own, the Bitners contend that Dr. Arnold's testimony at trial went "beyond the fair scope of anything provided to [them] prior to trial." **Id.** at 22.

Rule 4003.5(a) permits, in relevant part, an opposing party to discover facts known and opinions held by an expert and acquired or developed in anticipation of litigation or for trial. The party answering the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert; the answer or separate report shall be signed by the expert. Instantly, the Bitners neither explain how they know that Dr. Arnold did not actually answer the interrogatories himself, nor do they produce any evidence to show that counsel provided the answers and Dr. Arnold only

"signed off on them."[6]  We agree with the trial court's statement that "Plaintiffs' counsel has provided no evidence for his specious claims that Dr. Arnold had no part in preparing these Answers, and we find that the Answers themselves clearly belie that claim."  Trial Court Opinion, 5/16/18, at 3.

Instantly, the supplemental answers to Plaintiffs' interrogatories included the following expert testimony that Dr. Arnold anticipated giving at trial:  general facts about Mr. Bitner's medical and treatment records as established by radiographic imaging; testimony to refute contentions put forth by Plaintiffs' experts that Dr. Sheehan performed an inadequate decompression at L4-5 and that he should have also operated on L3-4 and L5-S1; testimony to refute Plaintiffs' expert's criticism of Dr. Sheehan's surgical technique in placing L4-5 pedicle screws; testimony to dispute Plaintiff's expert's contention that Dr. Sheehan failed to perform a foraminotomy; testimony disagreeing with Plaintiff's expert's criticism of Dr. Sheehan's surgical repair of a dural breach; testimony to refute Plaintiffs' expert's claims that a cerebrospinal fluid (CSF)[7] leak are visualized on two of Mr. Bitner's

---

[6] We note that, alternatively, Plaintiffs may have waived this claim by not raising this argument in their pretrial motion *in limine*.  Rather, they claim in their motion that Dr. Arnold only "partially answer[ed] some questions." Plaintiffs' Motion *In Limine*, 11/2/17, at 2.  Clearly this is a different argument than saying the doctor did not prepare the answers himself.

[7] A CFS leak is caused by a tear or hole in the membrane that surrounds the brain and spinal cord (dura).  The tear allows the fluid that surrounds those

MRIs; there was no delay in diagnosis and treatment by Dr. Sheehan; and an opinion, based on review of imaging studies, that there is no radiographic evidence of a CSF leak, protruding nerve rootlets, clumped rootlets or arachnoiditis following Dr. Sheehan's surgery and prior to Dr. Argires' first operation. Based on these answers, we agree with the trial court's denial of the Bitners' motion in *limine* to exclude Dr. Arnold from testifying at trial. Dr. Arnolds' answers on the interrogatories were fairly representative of his trial testimony. Accordingly, the Bitners have failed to prove any actual prejudice or surprise from his testimony or any bad faith or willfulness by the Defendants. ***See Neal v. Lu***, 530 A.2d 103, 109 (Pa. Super. 1987), citing ***Sindler v. Goldman***, 454 A.2d 1054, 1058 n.8 (Pa. Super. 1982) (four factors trial court should weigh in determining whether failure to comply with local rule of discovery justifies exclusion of expert testimony are: "(1) the extent of any actual prejudice or surprise suffered by the party against whom the expert testified; (2) the ability of that party to cure the prejudice or surprise; (3) the extent to which allowance of the testimony disrupted the orderly and efficient trial of the case or of other cases in the court; and (4) the 'bad faith or willfulness' of the party that has failed to comply with the order.").

In their next issue, the Bitners argue that the trial court impermissibly allowed Dr. Rajiv Gupta, a neuroradiologist at Massachusetts General Hospital

organs to leak. When it leaks out, the pressure around the brain and spinal cord drops. ***See*** https://medlineplus.gov/ency/article/001068.htm (last visited 1/31/19).

and an associate professor of radiology at Harvard Medical School, to testify when his opinions went beyond the scope of his expert report.

In his report, Dr. Gupta indicated that his primary role as an expert in the case was to determine whether Dr. Zacharia's interpretation of Dr. Bitner's imaging studies met the standard of care for a neuroradiologist. To that end, Dr. Gupta reviewed various spine imaging studies to comment on reports made by Plaintiffs' expert, Robert Beatty, M.D., and Mr. Bitner's surgeon, Dr. Argires. The Bitners specifically contend that because Dr. Zacharia was granted summary judgment and dismissed from the case prior to trial, the court should not have permitted Dr. Gupta to testify regarding the standard of care provided by Dr. Sheehan, a neurosurgeon.

A review of Dr. Gupta's trial testimony reveals that Plaintiffs' counsel never objected to Dr. Gupta's testimony. In fact, Defense Attorney April Simpson objected to Plaintiff's counsel's scope on cross-examination of Dr. Gupta; the objection was overruled by the trial judge. *See* N.T. Jury Trial, 12/8/17, at 970 ("Objection. He's, I think outside the scope of direct examination. Dr. Gupta did not offer any testimony on his direct examination regarding the operation performed in terms of the procedure done, and I think he's way outside the scope of direct."). Accordingly, we find the claim waived for Plaintiffs' failure to object to Dr. Gupta testifying either in their pre-trial motions *in limine* or at trial. Pa.R.C.P. 227.1 (b)(1) (any error that could have been corrected during trial by timely objection may not constitute grounds for post-trial relief).

- 10 -

The Bitners next argue that the court erred in granting Defendants' motion *in limine*[8] that precluded Plaintiffs from presenting testimony regarding conversations Plaintiffs had with several of their healthcare providers. The Bitners contend that these conversations fall within a well-recognized exception to the general rule against hearsay. Specifically, the Bitners contend these conversations fall within the "Opposing Party Statement and Then-Existing Mental, Emotional, or Physical Condition" exceptions. Appellants' Brief, at 26. Plaintiffs also state that "[a]nother hearsay exception worth noting is the business records exception." *Id.*

An appellant is required to do more that "note" that a hearsay exception applies to given testimony or cite generally to exceptions that may pertain to

_____

[8] A trial court's ruling on a pre-trial motion *in limine*:

> [I]s subject to an evidentiary abuse of discretion standard of review. "Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. 'An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.'" *Grady v. Frito-Lay, Inc.*, [] 839 A.2d 1038, 1046 ([Pa/] 2003). In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014) (internal quotation marks and citations omitted, formatting modified) (quoting *Keystone Dedicated Logistics v. JGB Enterprises*, 77 A.3d 1, 11 (Pa. Super. 2013) (internal citations omitted)).

that testimony. It is not our duty as an appellate court to scour the record for pertinent testimony and make arguments for the parties. Moreover, after a pre-trial conference, the trial court held oral argument on the Defendants' omnibus motion and amended motion *in limine*. At the conclusion of argument, the court entered an order stating, in relevant part, that:

- Plaintiff has agreed not to introduce statements concerning what a "PT girl said" or what "PT" should have done;

- Plaintiff has agreed not to introduce statements that Mrs. Bitner had with Mr. Bitner's nurse with regard to pain medication;

- Plaintiff has agreed not to introduce conversations that Mrs. Bitner had with the patient advocate, Lori Yingst; and

- Plaintiff has agreed not to introduce testimony from Mr. Bitner concerning conversations he had with "some EMT" and "some PT" not associated with Hershey Medical Center.

Trial Court Order, 11/27/17, at ¶¶ 2(c)-(e), (h). Plaintiffs cannot now complain that the court improperly precluded these statements and conversations when they specifically agreed not to admit them via court order.

In their next issue the Bitners contend that the court erred in refusing to instruct the jury regarding any potential harm caused by Mr. Bitner's subsequent treating provider, Dr. Argires. Here, because the jury concluded that Dr. Sheehan was not negligent, it never reached the issue of causation and, thus, the lack of an instruction concerning Dr. Argires' subsequent treatment of Mr. Bitner could not have contributed to its verdict.[9] Thus, any

_____

[9] To prevail in a medical malpractice action, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician,

- 12 -

error concerning the failure to give a causation instruction was harmless. *See*

*Boyle v. Independent Life Truck, Inc.*, 6 A.3d 492 (Pa. 2010).

The Bitners next claim that the trial court erred in allowing improper habit or routine practice evidence to be admitted to show Dr. Sheehan was not negligent. Specifically, they claim that none of the Hershey Medical Center employees involved in Mr. Bitner's case had an independent recollection of what occurred and, as a result, testified only about their normal routine or habits in such circumstances.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Bennyhoff v. Peppert*, 790 A.2d 313 (Pa. Super. 2001). Pennsylvania Rule of Evidence 406 provides:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or there was an eyewitness.

Pa.R.E. 406.

Plaintiffs identify a single instance where the court permitted habit or routine practice evidence over Plaintiffs' counsel's objection. Specifically, on direct examination of defense witness, Nurse Daniel Meese, Plaintiffs' attorney objected during the following line of questioning:

---

that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (quotation marks and citation omitted).

Defendants' Attorney:  And if a patient had the kind of pain situation that Mrs. Bitner described to the jury and which I've tried to fairly represent to you, would that be something you might document?

Plaintiffs' Attorney:  Your Honor, I object to that.  Would it be something you might document?  I do not think that is an appropriate question.

The Court:  Why?

Plaintiffs' Attorney:  Well, first of all - -

The Court:  What's the basis?

Plaintiffs' Attorney:  It says you might document.  If Mr. Bitner -

The Court:  I think she's laying the foundation.  Ms. Simpson, are you laying a foundation for further questions?

Attorney Simpson:  Yes.  I believe so.

The Court:  Overruled.

N.T. Jury Trial, 12/8/17, at 851-52.  In the present case, Nurse Meese testified that he did not have an independent recollection of "Mr. Bitner or whether or not [Mrs. Bitner's] recollection[10] fairly represents [Mr. Bitner's] condition on [March 28, 2017] during [his] shift."  *Id.* at 850. However, Nurse Meese indicated that even without personally remembering Mr. Bitner's specific condition, there is a place in a patient's medical record to document a patient's pain score.  *Id.* at 851.  Nurse Meese testified a nurse could write "any outstanding events that don't fall within the normal documentation[,]" and that in this specific situation "that would have been something that [he] would

---

[10] Specifically, Mrs. Bitner testified that Mr. Bitner was "laying on his side, and he is screaming, shaking, and something was going on with his legs."  N.T. Jury Trial, 12/7/17, at 661.

have put in the interdisciplinary narrative [of a patient's medical chart]." *Id.* at 851-52.

Here, Nurse Meese did not recall Mr. Bitner's pain levels as testified by Mrs. Bitner three days post-surgery. The nurse's testimony of common routine when there was an unusual or outstanding event in a patient's history was relevant to whether, in fact, the nurse made a report regarding Mr. Bitner's unusual pain levels and symptoms on that date. This testimony bears directly on whether the jury could infer that Mr. Bitner was experiencing high levels of pain just days after surgery. We find no abuse of discretion in the court's admission of such evidence. **Bennyhoff**, **supra**.

Any remaining claims of improperly admitted habit or routine practice testimony have been waived for Plaintiffs' failure to object to the testimony at trial. **See** Pa.R.C.P. 227.1(b)(1)-(2); **see also Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP**, 957 A.2d 1223, 1229 (Pa. Super. 2008) (to preserve claim of error for appellate review, party must make specific objection to alleged error before trial court in timely fashion and at appropriate stage of proceedings; failure to raise objection results in waiver of underlying issue).

In their next issue on appeal, Plaintiffs contend that the trial court erred in precluding them from presenting Mr. Bitner's Social Security Disability records indicating that he was totally disabled based upon arachnoiditis.[11]

Instantly, the trial court granted the Defendants' motion *in limine* and excluded Mr. Bitner's Social Security Disability records on the basis of relevancy, concluding that the records were not relevant to the issues before the jury -- specifically, whether Dr. Sheehan breached the standard of care and/or caused Mr. Bitner's total disability. Pursuant to Pa.R.E. 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.

Plaintiffs claim that Mr. Bitner's total disability, as established in his Social Security medical records, goes to the standard of care in the case and "would have assisted the jury to find that there was arachnoiditis caused by CSF in the arachnoid, disputing Defendants' argument that there was no CSF leak and no arachnoiditis, and thus no negligence." Appellants' Brief, at 30.

First, any medical opinions expressed in those records would have been inadmissible hearsay. Second, the records would not have gone to the standard of care issue in the case; at best, they may have been relevant to damages. However, because the jury determined that Dr. Sheehan was not

_____

[11] Arachnoiditis is a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. https://my.clevelandclinic.org/health/diseases/12062-arachnoiditis (last visited 2/4/19).

negligent, damages was never an issue put before the jury for deliberation. Therefore, any error on the trial part to exclude the evidence was harmless error.

Next, Plaintiffs argue that the trial court erred in failing to permit their attorney to read an October 2014 MRI report to the jury in closing arguments.

The trial court sustained defense counsel's objection to Plaintiffs' counsel reading the MRI report during closing concluding that the reason the Plaintiffs wanted to read the report went to a theory that had been precluded from trial. Specifically, Defendants' counsel objected, stating, "[h]e's trying to suggest to the jury that the negligence claim in this case is that he did an inadequate decompression at L4-5, and that's not the claim in the case." N.T. Jury Trial, 12/11/17, at 42. Plaintiffs' counsel, however, argued that the reason for reading the MRI report had to do with one of their theories in the case, failure to perform a foraminotomy. *Id.* at 43. Specifically, Plaintiffs' attorney claimed that the MRI report would show that there was still stenosis seven months after Dr. Sheehan's surgery on Mr. Bitner, which would lend credence to Plaintiffs' theory that Dr. Sheehan did not perform a foraminotomy during his March surgery.

The trial court concluded that because Plaintiffs did not have any testimony to support the theory that the existence of stenosis supported their claim that Dr. Sheehan did not perform a foraminotomy, that line of argument must be precluded. We agree. The court permitted Plaintiffs to argue that the MRI radiologist repeatedly mentioned that there was a fluid collection after

Dr. Sheehan's surgery and that there were exposed rootlets and preexisting scar tissue when Dr. Argires performed his later surgeries. The issue regarding whether Dr. Sheehan did an inadequate decompression of the L4-5 had been precluded from being argued in the case pre-trial; thus, the court properly excluded that portion of the report denoting long-term stenosis in regard to the laminectomy performed by Dr. Sheehan.

In their next issue, the Bitners argue that the trial court erred in failing to allow them to amend their complaint to add additional claims based upon Plaintiffs' expert reports. Specifically, they contend that from the date of their second complaint, filed in March 2016, until the time of trial, their expert, Dr. Beatty, wrote six reports expressing opinions regarding several areas in which he believed Dr. Sheehan was negligent. The Bitners claim they were not seeking to add an entirely new claim, but were merely "seeking to enhance an already-pleaded count of negligence based upon the same conduct to comport the pleadings with Dr. Beatty's reports." Appellants' Brief, at 34.

In **Shiflett v. Lehigh Valley Hosp.**, 174 A.3d 1066 (Pa. Super. 2017), our Court explained:

> Under our rules of procedure, leave to amend a complaint is to be liberally granted. **Hill v. Ofalt**, [] 85 A.3d 540, 557 (Pa. Super. 2014). Nevertheless, "[i]t is axiomatic that a party may not plead a new cause of action in an amended complaint when the new cause of action is barred by the applicable statute of limitations at the time the amended complaint is filed." **N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.**, [] 564 A.2d 919, 928 ([Pa. Super.] 1989) (en banc); **see also Echeverria v. Holley**, [] 142 A.3d 29, 37 (Pa. Super. 2016) ("amendment introducing a new cause of action will not be permitted after the statute of limitations

has run in favor of a defendant" (brackets and citation omitted)) []; ***Junk v. East End Fire Dep't***, [] 396 A.2d 1269, 1277-78 ([Pa. Super.] 1978). "[T]he test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant." ***Hodgen v. Summers***, [] 555 A.2d 214, 215 ([Pa. Super. 1989]) (citation omitted)[.] The question is whether the operative facts supporting the claim were changed, not whether the amendment presented a new category of claim or theory of recovery.

***Id.*** at 1083.

First, we cannot find in the record a motion by Plaintiffs to amend their complaint. Instead we note that during argument on December 4, 2017, on Defendants' pre-trial motion *in limine*, the court precluded Plaintiffs from adding any more theories of negligence save for the two pled in their complaints: (1) failure to perform a foraminotomy; and (2) failure to properly seal a dural tear. The court's ruling was proper where the additional areas the Plaintiffs sought to introduce were entirely new theories of medical malpractice, namely: failure to properly interpret imaging (CT scans; x-rays); failure to adequately decompress the spine at L4-5; failure to perform inter-body fusion during the March 2014 surgery; failing to terminate the surgery early; and failing to include other levels of the spine in the March 2014 surgery. These theories differ from those the Plaintiffs' complaints allege and, thus, were properly excluded on the day of trial after the statute of limitations had expired on their professional liability action. ***Shiflett***, ***supra*** (plaintiff properly barred from amending complaint because it would introduce new theory of case as to which defendant had not been put on notice before statute

of limitations expired); 42 Pa.C.S. § 5524(2) (two-year statute of limitations for negligence cause of action).

In their next issue, Plaintiffs contend that the trial court erred in limiting their use of Dr. Argires' July 14, 2017 deposition and in refusing to allow Dr. Argires to testify as to things he would have done differently. Specifically, Plaintiffs claim that Defendants waived all objections to Dr. Argires' deposition testimony by not properly raising them at the time of deposition.

First, Plaintiffs fail to cite where in the record the excluded portions of Dr. Argires' video deposition appear. Plaintiffs merely state that "the trial court erred in *striking certain* testimony regarding what Dr. Argires . . . would have done differently." Appellants' Brief, at 38 (emphasis added). It is the appellant's duty to direct our Court to the part of the record that bears out his or her contentions. *See* Pa.R.A.P. 2119(c). We will not comb the record to cure any deficiency. ***Rock v. Meakem***, 61 A.3d 239 (Pa. Super. 2013). Because we cannot evaluate the import or relevancy of the omitted testimony, we find that this claim has been waived.

Second, even if the issue were not waived we would find it meritless. The July 14, 2017 deposition was a continuance of two prior depositions. At those prior depositions, the parties agreed that all objections, except as to form of question, were preserved until trial. Accordingly, the court properly determined that Defendants did not waive their objection to portions of Dr. Argires' deposition testimony at trial. Plaintiffs have not demonstrated or produced any evidence to show that the waiver agreement was any different

for the July 14th session. Thus, we discern of no trial court error. **See Havasy v. Resnick**, 609 A.2d 1329, 1330 n.2 (Pa. Super. 1992) (admissibility of evidence will be ruled upon at trial, generally, by trial judge; admissibility of contents of depositions normally problem for trial judge to decide under laws of evidence).

Next, the Bitners contend that the trial court erred in allowing Defendants' economic expert to testify as to Mr. Bitner's past and future economic loss based on income tax returns from Mr. Bitner's business.

We note that even if the tax return information was improperly admitted at trial, it was harmless error because the jury never reached the issue of damages which includes lost, future wages.[12]

_____

[12] Even if the issue had reached the jury we would find the claim meritless. The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. Rather, the true test is whether or not there is a loss of earning power, and of ability to earn money. Typically, earnings that represent the result of combined capital and personal services are not capable of establishing one's earning power. **See Serhan v. Besteder**, 500 A.2d 130 (Pa. Super. 1985); **see also Holton v. Gibson**, 166 A.2d 4 (Pa. 1960) (with respect to impairment of earning capacity, law requires only proof that injured person's economic horizons have been shortened as result of tortfeasor's negligence). However, where a business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earning power.

Here, the trial court concluded Mr. Bitner's business, Shaun Bitner Carpentry and Remodeling, was very small in scope, operated out of the Bitner's home, and had no employees save for the occasional assistance of Mrs. Bitner. While the business did use subcontractors for some of its work, the "earnings of the business were based predominantly on Mr. Bitner's labor and skills." Trial Court Opinion, 5/16/18, at 14. The court concluded that because the evidence

Finally, Plaintiffs claim that the trial court erred in failing to allow Plaintiffs' actuary expert to use his second report, dated October 30, 2017, which dealt with past and future economic loss.

Again, even if the court erred in excluding Cramer's second report, it was harmless error as the jury never reached the issue of damages.[13]

_____

showed Mr. Bitner's business was personal to him and the earnings of the business were a direct result of his own personal management and endeavors, the tax returns accurately measured his earning capacity for purposes of basing loss of earning capacity. We find no error in this legal conclusion or ruling.

[13] Similarly even if this issue had reached the jury, it has no merit. Plaintiffs' actuary expert, Jonathan Cramer, provided two reports dated August 21, 2017 and October 30, 2017. Plaintiffs admit that Cramer's first report used an improper calculation to determine economic loss. The second report, using government records, provided calculations for past and future income economic loss based upon the median income of carpenters, supervisors of construction trades and extraction workers and construction managers in Mr. Bitner's geographic area, Lancaster. Defendants claimed that Cramer's second report "set[] forth a completely new and different analysis of economic loss projections, markedly different from that which was set forth within the initial report dated August 21, 2017." Brief in Support of Defendants' Response in Opposition to Plaintiffs' Motion in Limine to Preclude Defendants' Expert Economist from Testifying from his Report, 11/13/17, at 4. In addition, they acknowledged that Cramer's "actuarial" assumption is nothing more than "an attempt to estimate Mr. Bitner's earning capacity through acquired skills and abilities" where Cramer "has no education, training or expertise in the field of vocational rehabilitation." Center for Forensic Economic Studies Review of October 30, 2017 report of Jonathan D. Cramer, FSA, 11/8/17, at 2.

Instantly, Mr. Bitner testified that after he graduated from high school in 1987, he began his work in the construction industry taking a job with a builder cleaning out houses and doing putty and trim work. N.T. Video Deposition, 8/11/17, at 11. Following that job, Mr. Bitner worked for his uncle installing siding. *Id.* Mr. Bitner then started a business in 1989 with a friend where he

J-A02008-19

Judgment affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2019

_____

performed carpentry and home improvement projects. *Id.* at 13. In 1990, Mr. Bitner started his current business, Shaun Bitner Carpentry and Remodeling, which involved general construction projects such as remodeling, building, plumbing, and electrical work. N.T. Jury Trial, 12/4/17, at 49.

The court excluded Cramer's second report, finding there was no evidence showing that Mr. Bitner had the qualifications to become a supervisor or construction manager, or that he would have been likely to assume one of those positions. As such, the court concluded that it was improper for Cramer's report to use those positions to base any projected future economic losses upon. Consistent with the defense's economic studies, Mr. Bitner's future losses were best based off of local Lancaster, Pennsylvania carpenters. We agree with this determination where it is supported in the record. Nothing in Mr. Bitner's deposition testimony indicates that he was trained or qualified to be a construction supervisor or manager.